[No. 11201. In Bank. — December 13, 1888.]

## SAN BENITO COUNTY, RESPONDENT, *v.* THE SOUTHERN PACIFIC RAILROAD COMPANY, APPELLANT.

STATE AND FEDERAL SUPREME COURTS — DECISIONS. — In cases where a writ of error will lie to the supreme court of the United States, the decisions of that court will be followed in preference to former decisions of this court.

CONSTITUTIONAL LAW — TAXING POWER — COUNTY LICENSE — RAILROAD FRANCHISE. — An ordinance passed by the supervisors of a county, imposing a license upon the Southern Pacific Railroad Company for carrying persons or freight for hire by means of railroad cars in the county, is void, as a tax upon the use of the franchise granted to that railroad company by the government of the United States. Both the franchise and its use are beyond the taxing power of the state.

APPEAL from a judgment of the Superior Court of San Benito County, and from an order refusing a new trial.

The action was brought to recover a license tax imposed upon the defendant under an ordinance passed by the board of supervisors of San Benito County, providing that all persons, firms, or corporations engaged in the business of carrying persons or freight for hire on or by means of railroad cars shall pay quarterly a license therefor in the sum of one hundred dollars.   The defendant, the Southern Pacific Railroad Company, pleaded in defense its franchises under the laws of the United States, known as the Atlantic and Pacific act of July 27, 1866, and the Texas Pacific acts of March 3, 1871, and May 2, 1872, and its acceptance of and compliance with those acts; and also the act of the legislature of the state of California passed April 4, 1870, confirming in the Southern Pacific Railroad Company the rights, privileges, franchises, power, and authority conferred upon, granted to, or vested in said company by said acts of Congress, and alleged that the license tax sued upon was not authorized by the government of the United States, and would hinder, delay, and impede the defendant from performing its obligations to the United States, and would nullify and prevent the enforcement of the said several acts of Congress; and that the ordinance imposing the same was void and without authority of law. The further facts are stated in the opinion of the court.

*N. C. Briggs, J. B. Lamar, Walter A. Lamar,* and *J. E. Foulds,* for Appellant.

*N. A. Hawkins, B. B. McCroskey,* and *McCroskey & Hudner,* for Respondent.

PATERSON, J.—In view of the decisions of the supreme court of the United states in the cases of *State*

v. *Central Pacific R. R. Co.*, and *State* v. *Southern Pacific R. R. Co.*, 127 U. S. 1, it would seem useless to follow in this case the decisions of this court in *Central Pacific R. R. Co.* v. *State Board of Equalization*, 60 Cal. 35, *Los Angeles* v. *Southern Pacific R. R. Co.*, 61 Cal. 59, and *Santa Clara County* v. *Southern Pacific R. R. Co.*, 66 Cal. 642, for it is quite clear, we think, that the supreme court of the United States would hold, in a proper case, the ordinance before us herein, requiring the defendant to take out and pay for a license to continue its business of carrying persons or freight for hire by means of railroad cars in the county of San Benito, to be void; and of course we ought always to follow the rule of law laid down by that court, when our judgment, as in the case at bar, may be reviewed by it on writ of error. (*Belcher* v. *Chambers*, 53 Cal. 643.)

In the case referred to (*State* v. *Southern Pacific R. R. Co.*, *supra*), it was held that the defendant therein (defendant herein), having been invested with certain franchises derived from the government of the United States, in connection with other railroad corporations, by certain acts of Congress, and having accepted all the terms and conditions of each of said acts, and fully complied therewith, "the state of California can neither take them away nor destroy nor abridge them, nor cripple them by onerous burdens." The court in that case further said: " It may undoubtedly tax outside, visible property of the company situated within the state. That is a different thing. But may it tax franchises which are the grant of the United States ? In our judgment it cannot. . . . . No private person can establish a public highway, or a public ferry or railroad, or charge tolls for the use of the same, without authority from the legislature, direct or derived. These are franchises. . . . . Corporate capacity is a franchise. . . . . How can it be possible that a franchise granted by Congress can be subject to taxation by a state without the consent of

Congress?   Taxation is a burden, and may be laid so·
heavily as to destroy the thing taxed or render it value-
less.   As Chief Justice Marshall said, in *McCulloch* v.
*Maryland,* 4 Wheat. 316: 'The power to tax involves the
power to destroy.'   Recollecting the fundamental prin-
ciple that the constitution, laws, and treaties of the
United States are the supreme law of the land, it seems
to us almost absurd to contend that a power given to
a person or corporation by the United States may be
subjected to taxation by a state.   The power conferred
emanates from and is a portion of the power of the
government that confers it.   To tax it is not only de-
rogatory to the dignity, but subversive of the powers,
of the government, and repugnant to its paramount sov-
ereignty.   It is unnecessary to cite cases on this subject.
The principles laid down by this court in *McCulloch* v.
*Maryland, supra,* and *Osborn* v. *Bank,* 9 Wheat. 817, and
*Brown* v. *Maryland,* 12 Wheat. 436, and in numerous
cases since, which have followed in their lead, abun-
dantly sustain the views we have expressed.   It may be
added that these views are not in conflict with the de-
cisions of this court in *Thompson* v. *Railroad,* 9 Wall. 579,
and *Railroad Company* v. *Peniston,* 18 Wall. 5.   As ex-
plained in the opinion of the court in the latter case, the
tax there was upon the property of the company, and
not upon its franchises or operations.   (Id. 25, 37.)
Taxation of a corporate franchise, merely as such, un-
less pursuant to stipulation in the original charter of
the company, is the exercise of an authority somewhat
arbitrary in its character.   It has no limitation but the
discretion of the taxing power. . . . . It only remains
to consider whether the Southern Pacific Railroad Com-
pany as well as the Central Pacific was invested with
any franchise derived from the government of the
United States.   Of this we think there can be no ques-
tion. . . . . It follows that in each one of the cases now
before us the assessment made by the state board of

equalization comprised the value of franchises or property which the board was prohibited by the constitution of the state from including therein, and that these values are so blended with the other items of which the assessment is composed that they cannot be separated therefrom.  The assessments are therefore void."

In *Railroad Company* v. *Peniston, supra,* the court, referring to *McCulloch* v. *State of Maryland, supra,* said: " The tax, therefore, was not upon any property of the bank, but upon one of its operations,—in fact upon its right to exist as created.  It was a direct impediment in the way of a govermental operation performed through the bank as an agent.  It was a very different thing, both in its nature and effect, from a tax on the property of the bank.  No wonder, then, that it was held illegal. 'It does not extend,' said the chief justice, 'to a tax paid by the real property of a bank in common with the other real property in the state, nor to a tax imposed on the interest which the citizens of Maryland may hold in the institution in common with the other property of the same description throughout the state.  But this is a tax on the operations of the bank, and is consequently a tax *on the operations of an instrument employed by the government of the Union to carry its powers into execution. Such a tax must be unconstitutional.  Here is a clear distinction made between a tax upon the property of a government agent, and a tax upon the operations of the agent acting for the government.*  In *Osborn* v. *Bank* the tax held unconstitutional was a tax upon the existence of the bank, —*upon its right to transact business within the state of Ohio.* . . . . For this reason the power of the state to direct it was denied, but at the same time it was declared by the court that the local property of the bank might be taxed, and, as in *McCulloch* v. *Maryland,* a difference was pointed out *between a tax upon its property and one upon its action.* . . . . *A tax upon their operations is a direct obstruction to the exercise of federal powers.'*"

The contention that the exemption claimed ought not to be implied by the court, in the absence of any legislation by Congress upon the subject of exemption, is answered by the court in *Osborn* v. *Bank, supra,* where it said: "It is contended that, admitting Congress to possess the power, this exemption ought to have been expressly asserted in the act of incorporation; and not being expressed, ought not to be implied by the court. It is not unusual for a legislative act to involve consequences which are not expressed. An officer, for example, is ordered to arrest an individual. It is not necessary, nor is it usual, to say that he shall not be punished for obeying this order. His security is implied in the order itself. It is no unusual thing for an act of Congress to imply, without expressing, this very exemption from state control, which is said to be so objectionable in this instance. . . . . It is secured by the judicial power alone, that is, the judicial power is the instrument employed by the government in administering this security. . . . . Can a contractor for supplying a military post with provisions be restrained from making purchases within any state, or from transporting provisions to the place at which the troops were stationed? Or could he be fined or taxed for doing so? We have not yet heard these questions answered in the affirmative. It is true that the property of the contractor may be taxed as the property of other citizens; and so may the local property of the bank. *But we do not admit that the act of purchasing or of conveying the articles purchased can be under state control.*"

It seems to us that the reasoning of the court in the above cases applies with as much force to the license tax upon the use of the franchise—the operations of the road and the conduct of its business—as to the tax upon the franchise as property, and that the supreme court of the United States would so hold. Holding this opinion, it is our duty, notwithstanding the opinions of this

court upon the same subject hereinbefore referred to, to reverse the judgment and order of the court below, with directions to enter judgment for the defendant.

It is so ordered.

WORKS, J., MCFARLAND, J., and SHARPSTEIN, J., concurred.

THORNTON, J., concurring.—The rulings of the supreme court of the United States in the cases cited in the beginning of the foregoing opinion, on the question of the power of the state to tax the franchises granted by the United States government, must control our action in this case. The question is federal, and on such questions the settled law requires that the courts of the state shall conform to the decisions of the highest federal judicial tribunal.

The license tax in question herein is one that affects the franchises enjoyed by the defendant company under a grant or grants from the federal government. It is a tax on the right of this company to carry on its business under the federal grant, and comes within the judgments of the United States supreme court in the cases cited.

Under the constitution of this state, which requires all taxation to be equal and uniform throughout the state, it must be supposed that the legislature would not impose or authorize the imposition of any taxes by any county or other political subdivision of the state, whether in the nature of property or license taxes, which would destroy or render valueless the business of any railroad corporation, or cripple such corporations by onerous burdens. The guaranty of fair and just taxation is found in the constitution of the state. Taxation by a county must be equal and uniform, at least as to all persons engaged in the same business in the county, and such a guaranty will protect railroads in a county from unfair or unjust or oppressive taxation, which would tend to destroy their business or cripple it, or interfere with

their right to do business, as it protects individuals on whom such taxes are imposed.

The amount of the tax is so small in the case before us that it cannot be considered onerous.

But in the view taken by the supreme federal tribunal, the foregoing considerations are of no weight. The power of the state to tax is held not to exist at all, without regard to the fact whether the tax is so trifling as not to in any decree be onerous, or equal, or uniform on all persons, whether natural or artificial, engaged in the business of carrying persons or freight for hire, or by means of railroad cars.

Following, then, the judgments of the supreme court of the United States in the cases above cited, we must hold that the license tax under consideration was levied without authority of law, and must be held void.

With the foregoing observations, I add that I concur in the foregoing opinion and judgment.