[Sac. Nos. 1065, 1070.  In Bank.—December 14, 1905.]

## STOCKTON GAS AND ELECTRIC COMPANY, Respondent v. SAN JOAQUIN COUNTY, Appellant.

TAXATION—CORPORATE FRANCHISE OF GAS AND ELECTRIC LIGHT COMPANY —USE OF CITY STREETS—SITUS OF FRANCHISE.—The franchise extended by section 19 of article XI of the constitution to a gas or electric light company to lay pipes and conduits or erect poles in or along the streets of a city and supply the inhabitants of the city with artificial light is an incorporeal hereditament; it is real estate

in the nature of an easement pertaining to the streets of the city in which it is exercisable, and is inseparably annexed to the soil out of which the profit arises, and has a local situation in the place, and that place only, where the right is actually exercised, and under section 10 of article XIII of the constitution, can be assessed for purposes of taxation only in the county where it is situated.

APPEALS from judgments of the Superior Court of San Joaquin County.   George F. Buck, Judge.

The facts are stated in the opinion of the court.

Nicol, Orr & Nutter, for Appellant.

A. H. Ashley, for Respondent.

Page, McCutchen & Knight, and William B. Bosley, *Amici Curiae.*

LORIGAN, J.—These are appeals in two cases which, as they involve the same main legal proposition, will be disposed of together.   They are actions to recover taxes paid to the tax-collector of San Joaquin County by plaintiff under protest—one to recover such taxes paid in the year 1898, the other for taxes paid in the year 1899, upon the assessment of a franchise hereinafter to be mentioned.   Plaintiff is a corporation organized under the laws of this state for many purposes, among others to manufacture, use, transmit, purchase, and sell gas for illuminating, heating, and other purposes; to produce, generate, transmit, use, purchase, and sell electricity; to produce, conduct, use, purchase, and sell steam and steam power; and generally, to engage in the business of producing, transmitting, and selling light, heat, and power.   The place where the principal business of the corporation is to be transacted is set forth in its articles of incorporation as required by section 290 of the Civil Code, and is declared to be the city and county of San Francisco. At the time when the assessments in question on this appeal were made the plaintiff corporation was actually engaged in the business of supplying the inhabitants of the city of Stockton with gas and electric light, using the streets of the city for that purpose, its pipes and conduits being laid therein for the distribution of gas, and its poles strung with wires

erected thereon for the transmission of electricity. These assessments, made by the assessor of San Joaquin County, were of what was denominated the "franchise" of the appellant exercised in the city of Stockton, and which is described in the findings in each case as "the right and privilege of using the public streets and thoroughfares of said city of Stockton for laying down pipes and conduits therein and connections therewith, and for erecting poles therein and of running electric wires over, across, and about the same, and of making connections therewith so far as was necessary for supplying said city of Stockton and its inhabitants with gaslight and electric light, and in connection therewith to collect rates and charges for said light furnished said city and its inhabitants." In addition to the assessment upon its franchise as so described, the plaintiff was assessed each year in question upon other property in the city of Stockton, including its pipes, poles, and wires in use in, under, and upon the streets thereof. It paid all the other taxes levied without protest, but as to the taxes levied upon said franchise, paid them each year under protest, and these actions are brought to recover back the amounts so paid. Judgments were entered in favor of defendant, and from them plaintiff appeals.

It is provided by section 19 of article XI of the constitution that "in any city where there are no public works owned and controlled by the municipality for supplying the same with water or artificial light, any individual or any company duly incorporated for such purposes under and by authority of the laws of the state . . . shall have the privilege of using the public streets and thoroughfares thereof and of laying down pipes and conduits therein and connections therewith so far as may be necessary for introducing into and supplying such city and its inhabitants either with gaslight or other illuminating light, or with fresh water for domestic and all other purposes . . . upon the condition that the municipal government shall have the right to regulate the charges thereof." Section 3628 of the Political Code provides that "the franchise, roadway, roadbed, rails and rolling-stock of all railroads operated in more than one county in this state shall be assessed by the state board of equalization as hereinafter provided for. Other franchises, if granted by the authorities of a county, city, or city and county, must be assessed in the county, city, or

city and county within which they were granted; if granted by any other other authority, they must be assessed in the county in which the corporations, firms or persons owning or holding them have their principal place of business." No question is raised but that a franchise is property under the terms of the constitution and the revenue laws of the state, and that it is taxable as such. The sole question relative thereto is, Was the franchise assessed against the plaintiff properly assessable in the county of San Joaquin?

It is insisted by appellant that as to a corporation organized under the laws of this state, and authorized to supply gas and electricity to cities for illuminating purposes, its corporate franchise included as a necessary part thereof, and as indispensable to the enjoyment of that franchise, the privileges extended by the constitutional provision of using the public streets and thoroughfares of cities for laying down pipes and conduits and placing thereon electric poles and stringing wires across and over the same, and, as an incident to such privilege, the right to collect from the cities and the inhabitants thereof for gas and electricity distributed and sold therein; that the right to exercise these privileges, extended by the constitutional provision to all corporations created like the plaintiff for one of the purposes specified therein, constituted part of its formative charter; that its corporate franchise embraced and included these privileges as a grant to it of them by the sovereign authority, and that such franchise, considered as an entirety, was assessable only in the city and county of San Francisco, where its principal place of business, fixed by its articles of incorporation, was; and that the act of the assessor of San Joaquin County in assessing its franchise in that county was unauthorized and void. While we have directed attention to the contention of plaintiff, we have done so simply to state his position, and do not deem it necessary, in the view we take of the case, to particularly discuss it, though some reference may be made to it in a general way as we proceed. Nor do we feel called upon to determine other points, raised on the appeal by respondents, as to the proper construction to be placed on the phrase "principal place of business," as used in section 3628 of the Political Code,— whether it means the actual place of the transaction of franchise business or the office of the corporation where business

of a strictly corporate nature is transacted,—nor to pass, as invited to do, upon the constitutionality of this section of the Political Code itself.

While all these propositions have been learnedly discussed by counsel, a consideration of them is unnecessary, because we are satisfied that the validity of the assessment of this franchise by the assessor of San Joaquin County must be sustained, under section 10 of article XIII of the constitution. That section provides that "all property . . . shall be assessed in the county, city, city and county, town, township, or district in which it is situated." As this constitutional provision declares that all property (save property of railroads operated in more than one county, which it provides shall be assessed by the state board of equalization) must be assessed in the locality where it is situated, it follows, as a franchise is property subject to taxation, that if the franchise which was assessed against plaintiff in the county of San Joaquin had a local situation in the city of Stockton, in that county, it was properly assessed there under the constitutional mandate, and could be assessed nowhere else. And if it be determined from a consideration of the authorities that a franchise or right exercised by the plaintiff in the streets of the city of Stockton is of a local character, it is an immaterial matter for consideration as the source from which the right or franchise sprung. It can be of no moment that the franchise is granted by the constitution—by the state in its sovereignty. It is not the source from which it was derived that shall determine the place where it shall be assessed and taxed, but the place where it is situated. For the purpose of taxation under the constitutional provision it is not the *locus* of the grantor that is to be considered, but the *situs* of the franchise. This provision of the constitution is but the recognition of one of the fundamental principles of taxation, that property situated in a city and county should be taxed there for the purpose of revenue; that the property which has had the protection and benefit of municipal government shall pay its share of the expenses required to insure these advantages, apportioned on the basis of the actual value of that property. (*San Francisco etc. Ry.* v. *Scott,* 142 Cal. 229, [75 Pac. 575].) It applies to all property. And where a franchise, or the right acquired by an exercise of it, is of a local character,

it requires that it shall be assessed in the locality which is burdened with its exercise, and upon which is cast the duty of protecting the property embraced in such exercise. While the right is accorded by the constitution to the plaintiff in common with all kindred corporations and with individuals to use the streets of a city for the purpose of furnishing illuminants to it and its inhabitants, it cannot be said that any one individual or corporation possesses this right merely by virtue of the constitutional provision. The constitution extends a potential right to those enumerated in its provisions to avail themselves of the benefit of the franchise. But this general extension of the privilege does not invest individuals or corporations with the franchise in the streets of any particular city. It is only acquired when the constitutional grant is actually accepted; when the pipes and conduits for gas or the electric poles are laid in or erected on the streets of the city. It is then owned by any individual or corporation doing so, as an accepted franchise under the general constitutional grant, exercised in the particular city where these appliances are laid or erected. By the provisions of the constitution all persons and all corporations organized for the purpose of supplying these necessities are given the capacity to take the franchise extended thereunder, but they do not acquire it until they have accepted it by proceeding to its actual exercise.

While considering this constitutional grant of the right to use the streets of cities throughout the state by individuals or corporations for supplying either water or artificial light (when the city owns no public works for such purpose), it is well to remember the purpose which was sought to be attained under the provision. It was to prevent the abuses which the framers of the constitution believed were theretofore indulged in by municipal officers, who, by imposing onerous burdens and conditions upon persons desiring to compete with existing companies in such municipalities in supplying such necessities, precluded them from doing so, and hence created a monopoly in favor of existing corporations. By providing for unrestricted competition in the supplying of these necessities, it prevented such abuses. But while this was the purpose in view, and the facility was afforded to use the streets of a city for that purpose without the necessity of obtaining a

franchise therefor from the municipal authorities, it was not intended thereby that in the exercise of such privilege whatever rights of a valuable property nature were acquired should not be subject to taxation in the locality where, through the exercise of the franchise, the corporation became invested with them. Now, is the franchise exercised by the plaintiff in the city of Stockton, or, more accurately speaking, the right or interest which plaintiff acquired in the streets of that city by virtue of its exercise, property of a local character, property—to use the term in the constitutional provision—"situated" in the city of Stockton? We think the authorities support the contention of respondent that it is; that the franchise extended by the constitutional provision to lay pipes and conduits, or erect poles and supply the inhabitants of a city with artificial light, is an incorporeal hereditament—is real estate in the nature of an easement pertaining to the streets of the city in which it is exercisable; that it is inseparably annexed to the soil out of which the profit arises, and has a local situation in the place, and that place only, where the right is actually exercised.

The principle that franchises of the character here involved are treated as incorporeal hereditaments finds ready support in the authorities. In *Bowman* v. *Watham,* Fed. Cas. No. 1,740, p. 1082, it is said: "And the only inquiry now is whether the ferry right reserved is of the same nature, in this respect, as a part of the land. In what does it differ? It is appurtenant to the soil, and constitutes no inconsiderable part of its value. As has been shown, it is susceptible of a different ownership from the soil. It is still a right growing out of the soil, and subjects it to the servitude in whosoever's hands it may come. Although an incorporeal hereditament in contemplation of law, it is property, real property. It passes by deed—is assets in the hands of heirs, and in all respects is subject to the laws which regulate real estate. . . . There would seem to be no doubt that the ferry franchise, with all that belongs to it, may be taken by descent or by conveyance the same as other interests which pertain to realty." In *Dundy* v. *Chambers,* 23 Ill. 312, it is also said: "Chancellor Kent, in his Commentaries (vol. 3, p. 458), in treating of franchises in roads and ferries, says: 'An estate in such a franchise, and an estate in land, rest upon the same principle,

being equally grants of a right or privilege for an adequate consideration.' And he calls such franchises incorporeal hereditaments. Hilliard, in his treatise on Real Property (vol. 1, p. 1), classes a ferry franchise amongst hereditaments." And in *Gue* v. *Tidewater Canal Co.*, 24 How. (U. S.) 263, it is said: "The property seized by the marshal is of itself of scarcely any value, apart from the franchise of taking toll, with which it is connected in the hands of the company, and, if sold under this *fieri facias* without the franchise, would bring scarcely anything; but would yet, as it is essential to the working of the canal, render the property of the company in the franchise, now so valuable and productive, utterly worthless. Now it is very clear that the franchise or right to take toll on boats going through the canal would not pass to the purchaser under this execution. The franchise, being an incorporeal hereditament, cannot, upon the settled principles of the common law, be seized under a *fieri facias.*" In *People* v. *O'Brien*, 111 N. Y. 46, [18 N.E. 692, 7 Am. St. Rep. 684], the court said: "In speaking of the franchises of a corporation we shall assume that none are assignable except by the special authority of the legislature. We must also be understood as referring only to such franchises as are usually authorized to be transferred by statute,—viz., those requiring for their enjoyment the use of corporeal property, such as railroad, canal, telegraph, gas, water, bridge, and similar companies, and not to those which are in their nature purely incorporeal and inalienable, such as the right of corporate life, the exercise of banking, trading, and insurance powers, and similar privileges. The franchises last referred to, being personal in character and dependent upon the continued existence of the donor for their lawful exercise, necessarily expire with the extinction of corporate life, unless special provision is otherwise made. . . . In the former class it has been held that at common law real estate acquired for the use of a canal company could not be sold on execution against the corporation separate from its franchise, so as to destroy or impair the value of such franchise. . . . And by parity of reasoning it must follow that the tracks of a railroad company, and the franchise of maintaining and operating its road in a public street, are equally inseparable, in the absence of express legislative authority providing for their severance." In *City of*

*Chicago* v. *Baer,* 41 Ill. 306, the court says: ''Certain it is that this railway company has a franchise appurtenant to this street; that, through this franchise, it has a right of occupancy in a portion of the street, peculiar to itself, and, so far as may be necessary to run its cars, exclusive; that this right of occupancy is secured for a long term of years; that this franchise and this right of occupancy together constitute a property fixed and immovable in its character like realty, and recognized and protected by the law as fully as a fee simple in land.''

From these authorities it would appear, then, that the franchise extended by the constitution is of such a character that it is indissolubly annexed to the street of a city in and upon which it is exercised, and that, while an incorporeal hereditament, it is, in contemplation of law, real property, an easement appurtenant to such streets. This being so, it necessarily, as real property, has a *situs* in the city where it is exercised, and, under the constitutional provision with reference to the assessment of property, must be assessed there. It will be observed from these authorities which we have cited that the right to use the streets, and the right to take tolls by reason of their use, are inseparable parts of the franchise. The latter is a right arising out of the soil, a right to take a profit out of the easement acquired in the streets of the city, and the easement and the right to take a profit therefrom can be valuable only when exercised together. That these rights conjointly constitute the franchise is also the view taken by this court in *Spring Valley Water Co.* v. *Barber,* 99 Cal. 38, [33 Pac. 735].

But, independent of the general principle announced in these authorities with reference to the nature of the right plaintiff acquired by exercise of the franchise in the streets of the municipality, it is clear from the decision in the *Appeal of N. B. and N. R. R. Co.,* 32 Cal. 512, where the matter is fully considered and discussed, that the franchise exercised by plaintiff invested it with an easement therein, real property, the *situs* of which was necessarily local. And this is equally apparent when we examine the Civil Code. Section 801 thereof declares the servitudes which may attach to other lands, and which, when so attached, shall constitute easements, and, among others, are included, by subdivisions 4 and 6,

CXLVIII Cal.—21

respectively, "the right of way" and "the right of transacting business upon land." Under section 802 of the same code, "the right of way" is designated as among the land burdens which may be granted or held, although not attached to land. This right of way, an easement, is real property, and is distinctly and necessarily local in character, and situated in and upon land. It is clear, too, that the right to use the pipes, conduits, and poles for the transmission of illuminants to the city and its inhabitants is a right which is exercised and can be exercised only in connection with and at the *situs* of the right of way and location of the appliances. It is a right exercised by means of these appliances in connection with a right of way, so that a profit, which the company is authorized to take, may be made upon the sale of the illuminants which they serve to transmit. This right to so use them for this purpose is as local to the city of Stockton as are the gas-pipes and the electric poles under or upon its streets, and within the meaning of subdivision 6, above referred to, is a "right to transact business upon land," acquired in addition to the easement by virtue of the exercise of the constitutional franchise.

From all these considerations we are of the opinion that the plaintiff, in the exercise of its franchise, acquired rights of property in and over the streets of the city of Stockton of a character distinctively local to that city, and that, under section 10 of article XIII of the constitution, above quoted, they were properly assessed by the assessor of San Joaquin County in that county.

The appeal from the judgment in each of these cases is accompanied by a bill of exceptions. It is urged therein that the trial court erred in its rulings relative to the admission of evidence. Under the pleadings and the issues raised, we think the rulings were correct.

The judgments appealed from in both cases are affirmed.

Shaw, J., Angellotti, J., Van Dyke, J., and Cooper, J., concurred.

BEATTY, C. J.—I concur in the judgments of affirmance, and upon all essential points in the views of Justice Lorigan, with the sole exception that, in my opinion, his conclusion

requires that the following clause of section 3628 of the Political Code must be held unconstitutional, so far as it applies in terms to franchises which have a local *situs:* "If granted by any other authority, they must be assessed in the county in which the corporations, firms, or persons owning or holding them have their principal place of business." The framers of our constitution did not leave it to the legislature to determine where property having a local *situs* should be assessed. That was a matter which they settled themselves by the provision of section 10 of article XIII: "All property, except as hereinafter in this section provided [i. e. railroad property], shall be assessed in the county, city, city and county, town, township or district in which it is situated, in the manner prescribed by law." If, then, the privilege of using the streets of a city for the purpose of laying and maintaining pipes for the distribution of gas is a franchise having a *situs* in that city, the fact that it has been granted by "another authority" (the people of the state) gives no warrant to the legislature to say that it shall be assessed and taxed in the city or county where the holder of the franchise happens to have his principal place of business or where he resides. The whole question to be decided, therefore, is the question whether this particular franchise has a local *situs,* for if it has it is idle to refer to the above-quoted clause of section 3628 of the Political Code as determinative of the controversy.

Upon this question of *situs* or no *situs* of the franchise in question it can scarcely be necessary to add anything to what has been said by Justice Lorigan; but I am tempted to put the same view in a form which to me has always seemed unanswerable. Land always has a *situs.* The ownership of land consists in the right to use it for all lawful purposes, and that right of use constitutes its whole value. If the owner of land grants to another the right of way over it, or the right to lay and maintain pipes through it, the totality of ownership is divided into two separate interests: The original owner retains the right to use the land for every lawful purpose not inconsistent with the exercise of the privilege granted, and his grantee acquires the right to use it for the special purpose named in the grant. It is easy to suppose a case in which the value of the granted privilege

or easement exceeds the value of the interest remaining in the grantor,—indeed, such instances are of frequent occurrence; but whether of greater or less value, it is still an interest in that particular piece of land, and no more of an ideal abstraction than the remaining right of the owner to cultivate the soil. The aggregate value of the two rights constitutes the aggregate value of the land, and each is assessable where the land is situated. If this is true of an easement granted in land held in private ownership, it must be equally true of a franchise to use public lands for similar purposes. The privilege is essentially the same, and the only reason for calling one a franchise while the other is denominated an easement is that the former is held by direct grant from the sovereign, while the other is the grant of a private person. The conclusion is that the right to use land within the municipal boundaries of the city of Stockton is assessable only in Stockton for city purposes, and in the county of San Joaquin for state and county purposes. The difficulty and confusion which it is apprehended (according to the dissenting opinion of Justice McFarland) may be caused by our decision in these cases is, I think, purely imaginary, and the apprehension groundless.

There is, of course, a franchise—the franchise to have perpetual succession, etc., common to all corporations for whatever purpose organized—which is always assessable where the corporation has its principal place of business. This franchise is a pure abstraction, and, like the right to collect a promissory note or other chose in action, it has no fixed *situs,* but follows the person of its owner, and is assessable where the owner lives, and that, in the case of a California corporation, is the place designated in its articles of incorporation as its principal place of business. The only difficulty to be apprehended is in placing a valuation upon this, the strictly corporate franchise. But that difficulty is not new, and will neither be enhanced nor diminished by the present decision. The method of ascertaining the value of the corporate franchise, sanctioned by this court in some of its decisions, and nowhere disapproved as far as I am aware, is to take the difference between the market value of its shares and the value of its tangible property as the basis of assessment. Whatever difficulty this method involves remains, but remains

without addition by reason of anything here decided.  For, take the supposed case of a corporation having its principal place of business in San Francisco, and operating gasworks in several other cities.  We will suppose that the market value of its shares is one million dollars; that its plant, consisting of furnaces, retorts, tanks, pipes, etc., is now assessed in Sacramento at one hundred thousand dollars, in Stockton at one hundred and twenty thousand dollars, and in San Jose at one hundred and fifty thousand dollars.  (For the purposes of illustration three places are as good as a dozen.)  The assessor of San Francisco, even on the doctrine of the dissenting opinion, must deduct the aggregate of these sums, three hundred and seventy thousand dollars, from the value of the shares, to arrive at a basis for assessing the corporate franchise.  If hereafter, in consequence of the decision of these cases, the assessor of Sacramento values the local franchise at, say ten thousand dollars, of Stockton at twelve thousand dollars, and at San Jose at fifteen thousand dollars, all the additional labor imposed on the assessor of San Francisco will be to add thirty-seven thousand dollars to three hundred and seventy thousand dollars, in order to determine the aggregate amount to be deducted from the market value of the shares.  The labor will be inappreciable, and the difficulty *nil*.

 If it be said that confusion will arise out of differences of opinion between the assessor of San Francisco and the assessors of Sacramento, San Joaquin, and Santa Clara as to the true value of the local franchises, I freely admit that such differences of opinion are quite likely to arise; but this is a difficulty which inheres in the matter under any view of the question to be decided.  If the different assessors are liable to differ as to the value of a particular interest in land, so are they liable to differ as to the value of the plant of a gas company.  The difference between the two cases, if any, is a difference of degree and not of kind, and furnishes no reason for holding that property is assessable in San Francisco when the constitution requires it to be assessed in San Joaquin.

McFARLAND, J., dissenting.—I dissent, and think that the judgments should be reversed.  Assuming, as held in *Bank of California* v. *San Francisco*, 142 Cal. 276, [75 Pac.

832, 100 Am. St. Rep. 135],—against my views,— that a franchise is assessable property, that the franchises of a corporation may be legally assessed under the general word "franchise" or "franchises" without any other description, and that their value may be ascertained as declared in that case, still a franchise exists only in legal and mental contemplation, has no local *situs,* is indivisible, and, as said in *Spring Valley Water Works* v. *Schottler,* 62 Cal. 111, is "quite distinct and separate from the property which, by the use of such franchise, the respondent may acquire." The whole of the franchises involved in this case were granted by the state. The right of the municipality to regulate the laying of the pipes, etc., is a mere power of the municipality, not a franchise of the corporation appellant. Those franchises granted by the state being mere intangible ideal things, the state has a perfect right to determine where and how they should be assessed. The state has determined that when they belong to a corporation they shall be assessed at its principal place of business, and, in my opinion, that clearly means the place designated as its principal place of business in the charter of the corporation. Any other rule leads to an interminable division of the franchises, which would not only cause confusion and manifest injustice, but is not warranted by any provision in the law. And if the franchise, for purposes of assessment, is to be distributed through numerous municipalities, I cannot see how the method of ascertaining its value declared in the Bank of California case can possibly be applied. Of course, all tangible property which the corporation may have in any county or city is assessable there. It makes no material difference whether a franchise be considered as real or personal property. I think that for purposes of taxation it is clearly personal property, under section 3617 of the Political Code. But, whether real or personal, the franchise or "privilege to use the streets" of the city is admittedly granted by the state, and not by the city or county. Now, the provision of section 3628 is that franchises "granted by the authorities of a county," etc., must be assessed in the county or city in which they were granted, but "if granted by any other authority they must be assessed in the county in which the corporations ... . holding them have their principal place of business." And, as the franchises here involved were

granted by ''other authority'' than that of the city and county, they must be assessed in the county where the principal place of business of the corporation is; so that the question, from whatever direction we approach it, always is, Where is the principal place of business? And this question is in no way affected by a consideration of the different places where the franchise is being exercised, or the fact that it is not being exercised at all.

The following opinion was prepared some time ago, though not by myself, and I adopt it as clearly and forcibly expressing my views on the questions here involved:—

''These are actions to recover for taxes paid to the tax-collector of San Joaquin County by plaintiff under protest. The taxes were levied and assessed against plaintiff upon its 'franchise.' No question is raised that a franchise is property within the meaning of the constitution and revenue laws of the state, and that, as property, it is taxable. The sole question is, Where shall the franchise of a domestic corporation be assessed under the laws of the state? Section 19 of article XI of the constitution prescribes as follows: 'In any city where there are no public works owned and controlled by the municipality for supplying the same with water or artificial light, any individual or any company, duly incorporated for such purpose under and by authority of the laws of this state, shall, under the direction of the superintendent of streets, or other officer in control thereof, and under such general regulations as the municipality may prescribe for damages, and indemnity for damages, have the privilege of using the public streets and thoroughfares thereof, and of laying down pipes and conduits therein, and connections therewith, so far as may be necessary for introducing into and supplying such city and its inhabitants, either with gaslight or other illuminating light, or with fresh water for domestic and all other purposes, upon the condition that the municipal government shall have the right to regulate the charges thereof.' The purpose of this constitutional provision, which was not found in our earlier constitution, is well known and appears plainly from the constitutional debates. Formerly, when the granting of such franchises was left to the municipalities, it was thought that the municipalities themselves abused their powers, and by imposing most onerous conditions and restrictions upon

applicants for new franchises effectively created monopolies in favor of existing companies. To remedy this the constitution deliberately took away from these municipalities the power to bestow these franchises, and by direct grant conferred upon corporations organized for the indicated purposes not only the franchise to be, but the franchise to do, within the corporate limits of cities which did not own their own works. That this was a direct constitutional grant does not admit of doubt, and in fact has been expressly declared by this court in *People* v. *Stevens,* 62 Cal. 209, and in *In re Johnston,* 137 Cal. 115, [69 Pac. 973], in which last case it is said that the sole power which a municipality now has in this regard is the power of general regulation which is expressly conferred by terms in the constitution, and that the municipality cannot impose any additional burdens or terms as a condition to the exercise of the franchise so granted.

"Appellant in this case is a corporation organized under the laws of the state of California for many purposes specifically set forth in its articles of incorporation. To manufacture, use, transmit, purchase, and sell gas for illuminating, heating, and other purposes; to manufacture or otherwise dispose of the residual products therefrom; to sink and construct natural gas-wells, and to deal in the products thereof; to produce, generate, transmit, use, purchase, and sell electricity; to purchase, use, and sell water and water-rights, and wells, flumes, ditches, pipes, and conduits in connection therewith; to produce, conduct, use, purchase, and sell steam and steam power, and generally to engage in the business of producing, transmitting, and selling light, heat, and power; to purchase and sell patents and patent rights relating to the purposes above mentioned. The place where the principal business of the corporation is to be transacted is set forth, as required by section 290 of the Civil Code, as the city and county of San Francisco, state of California. We have thus a corporation organized for sundry legitimate purposes, which has declared—as the law compels it to do—the place where the principal business of the corporation is to be transacted. This place of business is declared to be the city and county of San Francisco, and this corporation derives its franchise for the supplying of artificial light to the city of Stockton, and to any or all other cities of the state, by direct grant from the

constitution.    Where is this franchise to be assessed?    This
question would seem to find a ready answer in the language
of section 3628 of the Political Code, which provides as
follows: 'The franchise, roadway, roadbed, rails, and rolling-
stock of all railroads operated in more than one county in
this state shall be assessed by the state board of equalization,
as hereinafter provided for.    Other franchises, if granted by
the authorities of a county, city, or city and county, must
be assessed in the county, city, or city and county within
which they were granted; if granted by any other authority,
they must be assessed in the county in which the corporations,
firms, or persons owning or holding them have their principal
place of business.'    When the Civil Code prescribes that the
articles of incorporation must set forth the place where the
principal business of the corporation is to be transacted, and
when the Political Code declares that the franchise, if granted
by any other authority than that of a county, city, or city
and county, 'must be assessed in the county in which the
corporations, firms, or persons owning or holding them have
their principal place of business,' there is the foundation of
an argument, persuasive, though not of course conclusive,
that by the uses of this phrase, 'the principal place of busi-
ness,' the legislature meant one and the same thing.    The
principal place of business of a corporation means, of course,
the principal place for the transaction of the corporation's
business, the place where directors' and stockholders' meetings
are held, where the offices of the corporation are situated,
for the purpose of the transfer of stock, the levying of assess-
ments, the declaration of dividends, and for the performance
of all other business strictly corporate in its character.    Such,
of course, is the well-settled meaning of the phrase.

"But respondent contends that as this corporation is actually
engaged in the business of supplying the inhabitants of the
city of Stockton with light, and is using the streets of the
city for that purpose, and is in Stockton collecting its revenues,
for the purposes of taxation of its franchise, this should be
considered its principal place of business, within the meaning
of section 3628 of the Political Code; and it argues further
in support of this view the injustice that results to a muni-
cipality when a corporation so exercising the privilege of using
its streets pays to that municipality nothing for that intangible

but valuable property called its franchise. But to this it may be answered that the revenue laws of the state at best are imperfect, and are frequently unjust, inequitable, and even oppressive. No scheme has yet been devised by man for an absolutely economical, just, and uniform mode of taxation. Primarily, the sovereign power is interested in seeing that all property bears its just proportion of taxation. It is to the state a minor matter whether the tax itself is collected by one or another of its agents and mandatories. We have seen that the power to grant or to refuse such franchises was, for the abuses which had crept in, absolutely taken away from municipal corporations by the constitution itself; and it may well have been that it was this circumstance which prompted the legislature to make provision, as it has done, for the assessment of such franchises at the principal place of business of the corporation. If municipalities had the power to grant such franchises, then of course the question would be a simple one, and would be solved by the very language of section 3628; but when the people saw fit to make these franchises a matter of constitutional grant, the legislature was at once confronted with the problem of fixing a *locus* for the assessment of these franchises. One corporation might be organized—as was this—for the purpose of supplying any number of cities with artificial light. Its franchise is distinctively one franchise, notwithstanding the fact that its operations might be extended to many municipalities. An obvious and important distinction, and one never to be lost sight of, exists between the franchise itself and the exercise of the franchise. The franchise is the privilege granted by the constitution to a corporation or to a private person to do certain things—not as to one, but as to any number of municipalities. The franchise may be exercised in one or in many municipalities. If a corporation should be exercising its franchise in several municipalities, how, under respondent's contention, and under the present system of fixing a valuation upon such franchise, could it be assessed? Would it be divisible in the different cities? Would it be assessed in the one where the larger business was done, or where the larger profits were received? If the company sustained a loss in one municipality, and made a profit in another, in the assessment of the franchise would it be worth

less than nothing in one municipality, or would its loss in that city be set off against the valuation in the city where it made a profit? These, and many more like questions, leading to inextricable entanglement and confusion, are eliminated only by giving the obvious and common-sense meaning to section 3628 of the Political Code. Assessing the franchise not in the many cities or counties where it may be exercised, but assessing it, as the code directs, where the corporation has its principal place of business, affords a simple, plain, and understandable solution of the whole matter; and such, we think, was the clear meaning of the legislature."

Henshaw, J., being disqualified, Justice Cooper, one of the justices of the district court of appeal for the first appellate district, participates herein *pro tempore*, pursuant to section 4 of article VI of the supplement to the constitution.