[Civ. No. 112.  Third Appellate District.—January 2, 1906.]

## SAN JOAQUIN AND KINGS RIVER CANAL AND IRRIGATION COMPANY, Appellant, v. MERCED COUNTY, Respondent.

TAXATION—CORPORATE FRANCHISES—ASSESSMENT—SITUS.—The grant of power to exist and act as a corporation is in itself a franchise and is assessable as such. This creative franchise is inseparable from the being or personality of the corporate body, and must have its situs wherever the corporate entity has its domicile or residence, and this in law is the place where its principal place of business is situated, and such franchise must be there assessed.

ID.—CANAL COMPANY—SPECIAL FRANCHISE TO COLLECT WATER RATES.— A corporation, organized under the act of May 14, 1862, authorizing the incorporation of canal companies, and having its principal place of business in one county, and owning in another county canals which it uses for the purpose of conveying, distributing and selling water to its customers, exercise, in such latter county, a special franchise distinct from its general franchise to exist and act as a corporation, and such special franchise is properly assessed in the county where the canals are situated.

ID.—DESCRIPTION OF FRANCHISE.—An assessment of the property of such a corporation, which after describing the canals, contained the following item, "Franchise on above-described canals, $15,000," is a sufficient description of the special franchise to collect water rates in connection with the operation of the canals.

ID.—CANALS SITUATED IN SEVERAL COUNTIES.—The fact that such canals extend to several counties does not prevent the special franchise from being assessed in one of such counties.

APPEAL from a judgment of the Superior Court of Merced County. E. N. Rector, Judge.

The facts are stated in the opinion of the court.

2 Cal. App.—38

Mastick, Van Fleet & Mastick, for Appellant.

E. H. Hoar, District Attorney, for Respondent.

McLAUGHLIN, J.—This is an action to recover taxes paid under protest. The complaint contains a concise statement of the following facts: 1. That on September 1, 1871, the plaintiff was incorporated under an act entitled "An act to authorize the incorporation of canal companies," approved May 14, 1862.   2. That ever since said date it has been and now is a corporation organized and doing business under the laws of this state, and has had its principal place of business in the city and county of San Francisco.   3. That it was incorporated "for the purposes of the construction of canals for the transportation of passengers and freight, and for the purpose of irrigation and water power, and for the conveyance of water for mining and manufacturing purposes."   4. That it has never owned, possessed or held any franchise granted by the authorities of Merced county, or any municipal corporation or body within the limits of said county.   5. That on the first Monday in March, 1903, the only franchise or franchises it owned, held, or possessed were those obtained by virtue of its incorporation, and the exercise of powers conferred by its charter, and the law under which it was incorporated.   6. That on said first Monday in March, 1903, it "was the owner of certain canals in the county of Merced, used for the conveying and distribution of water, and constructed and operated by said plaintiff in pursuance of the provisions of the act of the legislature above mentioned, and for the purposes for which said company was incorporated as aforesaid.   7. That the property of plaintiff, including the canals above mentioned, was assessed by the assessor of Merced county for the fiscal year 1903-04, and said assessment contained the following item: "Franchise on above-described canals, $15,000."   8. That in due time the tax collector of Merced county demanded the payment of $367.50 as taxes levied upon the property designated on the assessment-roll as "Franchise on above-described canals," and said sum was paid under protest duly and regularly made and filed at the time such tax was paid. The court sustained a general demurrer to the complaint, and judgment was thereupon entered in favor of the defendant.

The question presented by this appeal is whether or not
the plaintiff owned a franchise connected with its canals and
corporate business, which was assessable in Merced county.
The question is as complex as its proper solution is important.
It involves the consideration of principles upon which taxa-
tion is based, and invites a careful study of corporate organi-
zation and powers, as distinguished from corporate owner-
ship of property, tangible and intangible.   It will, doubtless,
be conceded that all property, corporeal and incorporeal,
whether owned by natural or artificial persons, should bear
its just and proper proportion of the burdens of government.
This concession necessarily involves the admission that cor-
porations, in common with natural persons, should be willing,
and, if unwilling, should be compelled, to pay taxes upon all
property owned by them, according to the situs and value of
such property.   Under the constitution of this state franchises
must be classed as property subject to taxation.   (Const.,
art. XIII, secs. 1-10; *Spring Valley W. W.* v. *Schottler,*
62 Cal. 108; *Bank of California* v. *San Francisco,* 142 Cal.
277, [100 Am. St. Rep. 130, 75 Pac. 832]; *Stockton G. & E.
Co.* v. *San Joaquin Co.,* 148 Cal. 313, [83 Pac. 54].)   The
franchises so assessable may be classified as creative and
special.   The creation of a corporation, the grant of power
to exist and act as such is, in itself, a franchise, and it has
been distinctly decided that such franchise is assessable as
property.   (*Bank of California* v. *San Francisco,* 142 Cal.
279, [100 Am. St. Rep. 130, 75 Pac. 832 et seq.].)   This
creative franchise is inseparable from the being or personality
of the corporate body, and hence it must have its situs wher-
ever the corporate entity has its domicile or residence, and
this, in law, is the place where its principal place of business
is situated.   (*Trezevant* v. *Strong Co.,* 102 Cal. 48, [36 Pac.
395]; *Whitney* v. *Sellers Com. Co.,* 130 Cal. 189, [62 Pac.
472].)   This being true, it follows under the express mandate
of the constitution that such franchise must be assessed and
taxed in the county where its principal place of business is
located.   But this franchise to be and act as a corporation
simply gives the corporation life as a person, bearing the
same relation to the taxing power borne by natural persons.
It is thus endowed with capacity to hold property, and, with-
in the limits of corporate power and life, to do the acts and

things a natural person may of right do. Property acquired and held by corporations is subject to the same burdens imposed upon property held by natural persons. There is no difference, as far as taxation is concerned, between the artificial person, born of the law, and the being whose life and powers are given and measured by Omnipotence. Each steps upon the stage of human activity to acquire, possess, and hold property on the same terms and conditions. If a particular right or thing is taxable when owned or held by an individual, it is likewise taxable when owned or held by a corporation, and the place where it may be taxed will be fixed by the same rules in both instances. The natural person has an inherent right to engage in any line of human activity, not dependent on special grant of privilege or power from the municipality or state. He may be merchant or mariner, banker or baker, teacher or tailor, according to his fancy, and his right to engage in any of the varied pursuits of man cannot be taxed as property. These same rights pertain to a corporation, within its limited sphere, and are included in the franchise to exist and act as a corporation. But this creative or corporate franchise confers upon the aggregation of individuals composing a corporation no greater measure of inherent right than is enjoyed by each individual citizen. In fact, the rights it may enjoy, in common with natural persons, are limited by the express powers conferred upon it. The enumeration of powers in its charter is a limitation on corporate capacity, and not an enlargement of inherent rights, attaching to the legal person thus created. All natural persons have the right to acquire, own and exercise franchises resting in special grant from some authoritative source. But this power, like the power to hold other property, may never be exercised, and hence the power is, obviously, distinct from the property interest which vests only when the franchise is acquired by acceptance or purchase, or, in other words, when the power is exercised. And so it is with corporations. A corporation may have power to acquire realty, and yet never own such property. Its corporate franchise, its charter, may grant the power to acquire and exercise separate, distinct, and varied franchises, but none may ever be acquired or owned.

This distinction between the power to own, and ownership, is very important when we come to consider the difference be-

tween the creative franchise, vesting the power to acquire, and other franchises which it may subsequently acquire by purchase or acceptance. It points the difference between the general, creative franchise to be, and the special franchises which, when accepted or purchased, vest privileges or franchises resting in special grant from governmental sources. Above all things it eliminates the heresy that all special franchises, enjoyed and exercised by a corporation, whether acquired by acceptance or purchase, are merged in the general franchise which creates the corporation, and endows it with enumerated powers. The mere fact that a corporation is organized for the specific purpose of acquiring, and is given power to acquire public uses or franchises, does not carry with it the idea that such franchises, when acquired, be they many or few, are merged in, and must be assessed as part and parcel of the general corporate franchise. This idea would absolutely destroy the equality, enjoyed by natural and artificial persons alike, in matters of·taxation. If a natural person should purchase a dozen franchises to supply water or light to the inhabitants of as many different cities, none would question the proposition that each franchise so held could be assessed in each particular city, according to its value and kind. And if such person purchased a single franchise of either character, nobody would have the hardihood to contend that his purchase was merged in his identity as an individual, or in his right to acquire that particular kind of property. If this be true of franchises acquired by purchase, it certainly cannot be said that franchises acquired by acceptance are governed by a different rule, for it must be admitted that all franchises originally vest by acceptance of a special grant. If, then, a natural person may be compelled to pay taxes on each separate franchise held and exercised, there is no principle of law, logic or justice, sustaining the view that immunity from such taxation is enjoyed by corporations, because, forsooth, it requires another and very different franchise to give them life and power. The unfairness and injustice of such a rule is apparent when the status of corporations owning such franchises is contrasted with the status of banking or other purely private corporations. All corporations enjoy corporate franchises, but only a comparative few can or do acquire special privileges denominated franchises,

and as an incident thereto enjoy the right or franchise to take private property as public agents. All corporate franchises, under our system, may be taxed, and it would be extremely unjust, if corporations owning and enjoying additional and valuable franchises could not be assessed therefor aside from any assessment levied upon the corporate franchise, held and assessed in common with all other corporations debarred from owning or exercising such privileges. It would be strange, indeed, if these particular creatures of the law could find in their creation the source of immunity not enjoyed by citizens who, in the aggregate, constitute the source from which all laws proceed. The distinction between the corporate or creative franchise, and other special franchises which the corporate entity may acquire and exercise, has long been recognized by our courts. (*San Francisco* v. *Spring Valley W. W.,* 48 Cal. 493; *San Jose* v. *January,* 57 Cal. 616; *Spring Valley W. W.* v. *Schottler,* 62 Cal. 107; *Bank of California* v. *San Francisco,* 142 Cal. 277, [100 Am. St. Rep. 130, 75 Pac. 832]; *Stockton etc. Co.* v. *County of San Joaquin,* 148 Cal. 313, [83 Pac. 54].) In the light of these decisions, and the constitutional mandate compelling the assessment of all franchises, it must be considered as the settled law of this state that each separate franchise owned and exercised by any person, natural or artificial, may be assessed and taxed. And as a matter of abstract justice, as well as of logic and law, it must also be considered as settled that the existence of each franchise as a separate and distinct entity, is in no way dependent upon the nature or origin of the legal person by whom it is owned or exercised. Justice and fairness demand that all persons, natural and artificial, should bear the burdens of taxation equally, and, therefore, if a person of either class owns franchises to collect tolls on many different roads or ferries, or to use the streets of many cities for tracks, or poles, or mains, the taxation of each franchise so owned cannot be evaded under the pretense that ownership of this class of property is included in the right or power to acquire it. The great franchise of natural life carries with it no right to enjoy special franchises or privileges without taxation, and the law confers upon its corporate creatures no such immunity.

In the case at bar, the appellant is a corporation, and its franchise to exist and act as such is, unquestionably, assessable

only in the city and county of San Francisco. It only remains, therefore, to determine whether it owns and exercises any other franchise, connected with, or incident to, its canals and water system which is assessable in Merced county. The powers conferred by the act under which appellant was incorporated are comprehensive and important. These powers it has, admittedly, exercised and is still exercising. It was thereby clothed with power to acquire property, appropriate and distribute water, construct canals, and to establish, collect and receive rates, water rents and tolls. As an incident to the public uses and franchises it might exercise and acquire, by acceptance or otherwise, it was given the right of eminent domain as a public agent in charge of public uses and franchises. When its corporate organization was completed, before it had acquired any property or done any corporate act, it held only the single corporate franchise to exist with enumerated powers. Any other franchise which was offered in the grant of powers, and which by proper manifestation of acceptance or exercise of power it might acquire, was inchoate (*Stockton etc. Co.* v. *County of San Joaquin*, 148 Cal. 313, [83 Pac. 54].) It might, at will, accept or reject such franchise. But when it accepted the offer, and had manifested such acceptance, by the construction of canals, the appropriation and distribution of water, and the collection of water rents or rates, the inchoate franchise became complete. The right to collect rates or compensation for the use of its water, thus dedicated to the public use, then became existent as a separate entity or franchise, and vested in appellant as a valuable property right. (*Stockton etc. Co.* v. *County of San Joaquin*, 148 Cal. 313, [83 Pac. 54].)

The doctrine that the right to collect rates for water distributed or furnished is a franchise independent of the creative or corporate franchise is by no means new or strange. This rule and other analogous rules find support in many well-considered cases. (*Spring Valley W. W.* v. *Schottler*, 62 Cal. 108; *San Francisco* v. *Spring Valley W. W.*, 48 Cal. 493; *San Jose G. Co.* v. *January*, 57 Cal. 616; *San Francisco* v. *Oakland etc. Water Cos.*, 148 Cal. 331, [83 Pac. 61] ; *Stockton etc. Co.* v. *San Joaquin*, 148 Cal. 313, [83 Pac. 54] : *San Benito* v. *Southern Pacific R. R. Co.*, 77 Cal. 520, [19 Pac. 827] ; *San Luis W. Co.* v. *Estrada*, 117 Cal. 177, [48 Pac.

1075]; *Conger* v. *Weaver*, 6 Cal. 548, [65 Am. Dec. 528]; *Robinson* v. *Southern Pacific R. R. Co.*, 105 Cal. 526, [38 Pac. 94, 722]; *Adams Express Co.* v. *Ohio*, 166 U. S. 217, [17 Sup. Ct. 604]; *State* v. *Central Pacific R. R. Co.*, 127 U. S. 40, [8 Sup. Ct. 1073]; *New Orleans etc. R. Co.* v. *Delamore*, 114 U. S. 501, [5 Sup. Ct. 1009]; *Hall* v. *Sullivan R. Co.*, 21 Am. Law Rep. 138.)    As was well said in a case recently decided: "The corporate franchise is considered as property, separate and distinct from the so-called franchises which the corporation may acquire subsequent to its incorporation."    (*Bank* v. *San Francisco, supra.*)    The constitution of this state expressly provides that the right to collect rates or compensation for the use of water supplied to any county, city, or town, or the inhabitants thereof is a franchise, and therefore the rule under discussion applies with peculiar force to corporations exercising such rights.    (Const., art. XIV, sec. 2; *Spring Valley W. W.* v. *Schottler*, 62 Cal. 108.)    As pointing to the reason for this distinction, between corporate and special franchises, as well as illustrating the importance of such distinction in reaching a proper solution of the question presented, we may for the moment dwell upon the effect of the constitutional provision just mentioned.    A corporation or ·natural person may own canals, ditches, pipes, or mains conveying water, and yet no franchise may be incident to or connected with such ownership.    As long as the water conveyed is devoted to the private use of the owner, no right of eminent domain, nor right to use public streets or thoroughfares, incident to public franchises, exists.    But the moment that water is distributed and sold or rented to others, a public use arises, and the franchise to collect rates fixed by the proper authorities, with all its important attributes and privileges, springs into existence.    The use to which the water is dedicated creates the franchise with all its attendant privileges.

It follows from the application of the principles above discussed that the appellant owns and is exercising a franchise growing out of, and incident to the operation of, its canals. which may be assessed and taxed as separate and distinct from its corporate franchise.    And it seems clear to us that recent decisions of the supreme court are determinative of all questions touching the situs of such franchise for purposes of taxation.    (*Stockton etc. Co.* v. *San Joaquin Co.*, 148 Cal.

313, [83 Pac. 54] ; *San Francisco* v. *Oakland etc. Water Cos.,*
148 Cal. 331, [83 Pac. 61].) As the franchise to collect rates
for water distributed arises out of the use to which the water
is devoted, it follows as a logical sequence that such franchise
can only be exercised where the water is distributed and the.
rates are collected. The corporeal substance, the water, from
the particular use of which the franchise arises, being situated
in Merced county and the franchise being there exercised, it
follows under the authorities last cited that the situs of the
franchise is in Merced county, and that it must be there as-
sessed. While the description of the franchise might be more
specific, it is as definite as the description upheld in *San Fran-
cisco* v. *Oakland etc. Water Cos., supra,* and as no objection
is made or urged on that ground, it must be held that it fairly
includes the franchise to collect water rates in connection
with the operation of the canals. The record before us con-
tains no hint that the canals are operated or the franchise
exercised in any other county than Merced, and, while it is
said in the briefs that the canal system extends to two other
counties, it is manifest that, under the rules governing ap-
pellate practice and supporting the action of the trial court,
such statement cannot be considered. It may, however, be re-
marked that the mere fact that the canals extend to three
counties instead of one can hardly render them, or rights
growing out of them, immune from taxation. Nor can such
fact give rise to any insuperable difficulty under any reason-
able and unstrained construction of the constitutional pro-
vision creating such franchises, and the laws relating to taxa-
tion.

The judgment is affirmed.

Chipman, P. J., and Buckles, J., concurred.