[No. D003364. Fourth Dist., Div. One. Sept. 9, 1986.]

COX CABLE SAN DIEGO, INC. Plaintiff and Respondent, v. COUNTY OF SAN DIEGO, Defendant and Appellant.

COUNSEL

Lloyd M. Harmon, Jr., County Counsel, and Joseph Kase, Jr., Assistant County Counsel, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Philip C. Griffin, Deputy Attorney General, as Amici Curiae on behalf of Defendant and Appellant.

Ferris, Brennan & Britton, Alfred G. Ferris, Tamara K. Fogg and Gary D. Weatherford for Plaintiff and Respondent.

OPINION

LEWIS, J.—Are the rights to use and occupy, both overhead and underground, public rights-of-way conferred on a cable television system by a city or county franchise or license subject to property tax assessed against the franchisee or licensee by the county assessor? The trial court held, among other things, those rights are not subject to property tax as there was no possessory interest subject to taxation. The trial court therefore ordered refund of taxes to Cox Cable San Diego, Inc. (Cox), paid on 1980-1981 assessments for possessory interests on property rights acquired in franchises or licenses originally issued to Cox in the 1960's by the County of San Diego (County) and the seven cities of San Diego, Chula Vista, El Cajon, La Mesa, National City, Lemon Grove and Imperial Beach. By agreement, Cox's action for refund (Rev. & Tax. Code,[1] § 5140 et seq.) was divided into three phases, with phase I involving the issues of possessory interest, constitutionality, federal preemption and double taxation. On stipulated facts, consisting primarily of the record of proceedings before the assessment appeals board, the trial court decided only the possessory interest issue.[2] We reverse and remand for further proceedings.

---

[1]All statutory references are to the Revenue and Taxation Code unless otherwise specified.

[2]The City of San Diego, in a separate stipulation, takes Cox's position by admitting the County erroneously made its property tax determinations on the interests involved.

Cox's business is receiving and retransmitting over-the-air television signals and satellite transmissions, as well as transmitting original programming, to cable television subscribers through its cable television distributing system consisting of such tangibles as satellite receiving stations, antennae, wires, coaxial-cables, conduit and amplifiers. These tangibles, not in issue here, are separately taxed by the County, annually producing more than $200,000 in property taxes.

At issue here is the taxability of Cox's rights to locate parts of its distribution system over, under and upon the public streets and rights-of-way in the County and the seven cities.[3] On these rights Cox paid a net total of $31,057 property tax under protest for the 1980-1981 tax year. Typically, the rights in question are "to use the public streets, other public rights of way or public places in City, to engage in the business of operating a Cable Television System . . . [and to] construct, maintain and operate wires, cables, poles, conduits, manholes and other television conductors and equipment necessary for the maintenance and operation of a Cable Television System." (San Diego City Ord. No. 12543NS, eff. Feb. 2, 1979, City of San Diego Franchise, § 5, p. 9.) Cox pays the public entities involved a franchise fee ranging from two percent to five percent of its gross revenues from operating the cable television distribution system. The parties describe the rights granted to Cox by the public entities as "franchises" or "special franchises," although the County also uses the terms "license" or "agreement" to describe them. Amicus curiae State Board of Equalization (Amicus or Board) describes these rights by using both the terms "franchise" and "special franchise."

With refinements, which we shall discuss, Cox's basic position is that "franchises" and "possessory interests" are separate and distinct types of property, each of which may or may not be taxable in its own right but neither of which is taxable as the other. Thus, Cox's view is the County tax on Cox's possessory interest was an impermissible tax on Cox's special franchise with respect to which Cox already paid its franchise fee.

County and Amicus take the basic position that possessory interests which are taxable can be and here were created by the franchises from the public

---

[3]Government Code section 53066 provides in part: "Any cable television franchise or license awarded by a city or county or city and county pursuant to this section may authorize the grantee thereof to place wires, conduits and appurtenances for the community antenna television system along or across such public streets, highways, alleys, public properties, or public easements of said city or county or city and county. Public easements, as used in this section, shall include but shall not be limited to any easement created by dedication to the city or county or city and county for public utility purposes or any other purpose whatsoever."

entities. As stated by Amicus: "Cable rights, pursuant to a franchise for a cable television system, to install improvements in the streets and public rights-of-way of municipalities in the County of San Diego are taxable possessory interests under the Constitution of the State of California, the Revenue and Taxation Code and the regulations of the State Board of Equalization empowered to determine possessory interests in this state."

The trial court concluded: 1. Cox's property rights granted by the franchises and licenses did not constitute taxable possessory interests;

2. There can be no such thing as a possessory interest within the boundaries of a public right-of-way;

3. Cox's interest in those rights-of-way are not distinguishable from the use exercised by all other members of the general public; and

4. It is not possible conceptually to separate the possessory interest which the County asserts that Cox has in those rights-of-way from the franchises themselves. The court gave the following reasons:

a. The underlying fee simple in the streets and public rights-of-way is owned by the abutting property owners;

b. Cox's interests in the rights-of-way are merely a special case of the rights that the public generally has in these rights-of-way, and these rights are not, as such, taxable, even though the use was for the purpose of laying cables;

c. Any public compensation from Cox for the use of the public streets and rights-of-way to lay its cables has to be deemed to be covered by the franchise fee;

d. Although not conclusive, title 18 of the California Administrative Code, section 21, provides that a possessory interest can exist only in nontaxable publicly owned real property, which provisions take precedence over the more general language in Revenue and Taxation Code section 107, which merely deals generally with the right to possession;

e. The streets and public rights-of-way are easements for public purposes, primarily vehicles but incidentally for other public purposes, and the law of this state is that the owner of an easement cannot create a subeasement;

f. If the right to use the streets were deemed part and parcel of the franchise, then section 23154 would seem to require that only the Board could place an assessment upon its taxable value; and

g. Cox's right to use the public streets and rights-of-way for the purposes of laying cables and so forth was not distinguishable from the public's use of the roads.

### I

■ Preliminarily, we dispose of County's argument the trial court erred in denying County's request for a statement of decision. Code of Civil Procedure section 632, providing for statements of decision, by its terms only applies to the trial of a question of fact. (See *Butler* v. *City of Los Angeles* (1984) 153 Cal.App.3d 520, 523, fn. 1 [200 Cal.Rptr. 372].) Thus, in cases such as this involving only a question of law (see *Bret Harte Inn, Inc.* v. *City and County of San Francisco* (1976) 16 Cal.3d 14, 23 [127 Cal.Rptr. 154, 544 P.2d 1354]), a statement of decision is not required.

### II

■■ ■ From the beginning point that the California Constitution mandates the taxation of all property according to its value (*Lucas* v. *County of Monterey* (1977) 65 Cal.App.3d 947, 952 [135 Cal.Rptr. 707]), we conclude the interests here in question, derived from the public entities franchises, are "property" subject to property tax. We find the theories and authorities Cox propounds to avoid the general rule of taxability are not persuasive or determinative of the question of taxability of these interests under the Constitution and laws of this state. Article XIII, section 1 of the California Constitution provides: "Unless otherwise provided by this Constitution or the laws of the United States:

"(a) All property is taxable and shall be assessed at the same percentage of fair market value. When a value standard other than fair market value is prescribed by this Constitution or by statute authorized by this Constitution, the same percentage shall be applied to determine the assessed value. The value to which the percentage is applied, whether it be the fair market value or not, shall be known for property tax purposes as the full value.

"(b) All property so assessed shall be taxed in proportion to its full value."

■ Likewise, section 201 reads: "All property in this State, not exempt under the laws of the United States or of this State, is subject to taxation under this code."

Section 201 has been construed to mean "all 'property' is subject to taxation." (*Lucas* v. *County of Monterey, supra,* 65 Cal.App.3d 947, 952.) ■ It has long been held that "a valuable possession of land is deemed property and is taxable." (*Ibid.*)

■ For purposes of taxation, the definitions of real property in the revenue and taxation laws of the state control whether or not they conform to definitions used for other purposes. (*Atlantic Oil Co.* v. *County of Los Angeles* (1968) 69 Cal.2d 585, 594 [72 Cal.Rptr. 886, 446 P.2d 1006].) ■ "Real estate" or "real property" includes the "possession of, claim to, ownership of, or right to the possession of land," and includes "improvements" (§ 104, subds. (a) and (c)). While "land" is undefined but is construed broadly for tax purposes (*Delaney* v. *Lowery* (1944) 25 Cal.2d 561, 571-572 [154 P.2d 674]), the code defines "improvements" to include "[a]ll buildings, structures, fixtures, and fences erected on or affixed to the land." (§ 105, subd. (a).)

These definitions aid in understanding what is meant by the interests in question here, possessory interests, which are: "(a) Possession of, claim to, or right to the possession of land or improvements, except when coupled with ownership of the land or improvements in the same person.

"(b) Taxable improvements on tax-exempt land." (§ 107.)

Board regulations define "possessory interest" and "taxable possessory interests" as follows: "(a) 'Possessory interest' means an interest in real property which exists as a result of possession, exclusive use, or a right to possession or exclusive use of land and/or improvements unaccompanied by the ownership of a fee simple or life estate in the property. Such an interest may exist as the result of:

"(1) A grant of a leasehold estate, an easement, a profit a prendre, or any other legal, or equitable interest of less than freehold, regardless of how the interest is identified in the document by which it was created, provided the grant confers a right of possession or exclusive use which is independent, durable, and exclusive of rights held by others in the property:

"........................................

"(b) 'Taxable possessory interest' means a possessory interest in non-taxable publicly owned real property, as such property is defined in section 104 of the Revenue and Taxation Code, and in taxable publicly owned real property subject to the provisions of sections 3(a), (b) and 11, Article XIII of the Constitution." (Cal. Admin. Code, tit. 18, § 21.)

While other aids to understanding the nature and taxability of the interests involved are available,[4] at this point we quote one last aid, an assessor's handbook entitled "The Appraisal of Cable Television" (AH 568, Apr. 1977) promulgated by the Board which states: "The franchise grants a privilege to operate a business within the boundaries of a municipal jurisdiction or unincorporated areas of a county. It also grants the right to construct improvements along city streets and rights-of-way. Such special franchises in the hands of public utilities have long been recognized as conferring on the franchisee a valuable interest in real property, namely, an easement. *The beneficial use of land as part of a special franchise given by local governments to private corporations,* not subject to state assessment pursuant to section 19 of Article XIII of the State Constitution, *creates a locally assessable possessory interest.*

"Assessors' Handbook Section 517, *The Appraisal of Possessory Interests,* states that many of the most valuable possessory interests in California can be characterized as unusual monopoly rights in real estate. Cable television systems are tantamount to a monopoly in any given area where the owners are granted a franchise." (AH 568 pp. 22-23, italics added.)

By stipulation we are entitled to consider this assessor's handbook. In our function of interpretation, we accord great weight to the implementation of the California constitutional provisions by the Legislature and the Board. (*ITT World Communications, Inc.* v. *City and County of San Francisco* (1985) 37 Cal.3d 859, 869 [210 Cal.Rptr. 226, 693 P.2d 811].)

■ ■ "'A possessory interest may be . . . the interest of either an easement holder or a mere permittee or licensee. . . .'" (*Board of Supervisors* v. *Archer* (1971) 18 Cal.App.3d 717, 727 [96 Cal.Rptr. 379], quoting Ehrman & Flavin, Taxing Cal. Property (1971) § 50, p. 60.) The elements to be tested in order to determine the existence of a possessory interest are, generally, exclusiveness, durability, independence and private benefit. (See Dale, *Possessory Interests: A Tax Without a Test?* (1984) 25 Santa Clara L.Rev. 65, 66-67.)

---

[4]See California State Board of Equalization, Property Taxes Law Guide, Property Tax Rules, rule 21(c), (d) and (e), defining "possession," "possessor" and "exclusive use"; see also California State Board of Equalization Assessors' Handbook (rev. Feb. 1974) The Appraisal of Possessory Interests.

The position of the County and Amicus is supported not only by the general taxability language of the Constitution but by case law. *Kern River Co.* v. *County of Los Angeles* (1913) 164 Cal. 751 [130 P. 714], involved the same type of use of the public highways for the purpose of transmitting electrical power in lines constructed along certain designated highways. The County of Los Angeles had granted a franchise for this purpose. The county assessor had assessed the franchise to use the highways. Plaintiff Kern River Co. argued its occupancy of the highways by its transmission lines is not a franchise and is not assessable as such, and the assessment of its transmission lines in their entirety should be deemed to include whatever rights-of-way it possessed in the public roads. Plaintiff emphasized it did not use its transmission lines for the purpose of collecting tolls. (*Id.*, at p. 753.) The Supreme Court answered: "The franchise carried with it 'the right to collect rates or compensation for the use of electrical energy.' It is true that this part of the franchise was not being used at the time of the assessment here attacked and that was a matter proper for the consideration of the board of equalization in fixing the value of plaintiff's privilege for the purposes of taxation. The mere fact that the right to collect rates was not asserted did not make it valueless however. *Plaintiff's position* as a going company, traversing a rich territory, *was of some increased value in keeping out possible competitors in view of the fact that any time it might have undertaken to supply electricity to the residents along the lines of its transmission system. It possessed an assessable franchise.*" (*Id.*, at p. 754, italics added.)

The *Kern River Co.* rationale and rule applies equally to Cox and leads to the conclusion Cox's rights-of-way under the authority granted by the various public entities here constitute "an assessable franchise." It is subject to property tax. (See also *Stockton Gas etc. Co.* v. *San Joaquin Co.* (1905) 148 Cal. 313, 316, 317-319 [83 P. 54]; *San Jose Gas Co.* v. *January* (1881) 57 Cal. 614, 616.)

Cox does not discuss the *Kern River Co.* case. Nor does it make note of the unquestioned taxability of the similar interest involved in *Stockton Gas etc. Co.* v. *San Joaquin Co., supra,* 148 Cal. 313, noted at page 316, and *San Jose Gas Co.* v. *January, supra,* 57 Cal. 614, held at page 616. Instead, Cox makes an argument which reduces in its essence to the proposition that because there are cases which have held to be taxable any possessory interests on land where the underlying fee is tax exempt (see, e.g., *State of California* v. *Moore* (1859) 12 Cal. 56, involving a mining claim right on federal land), *only* those possessory interests on land where the underlying fee is tax exempt can be subjected to the tax. No case reaches the latter conclusion which does not follow from the premise. Thus, it is unavailing to Cox's case for it to rely on the tax-exempt underlying fee theory and to cite the

presumption of abutting private landowner ownership to the center of the street, a taxable interest (Civ. Code, §§ 831, 1112) in order to make the claim its interests in the rights-of-way are nontaxable. The same presumptions of private ownership to the center of the street, enacted in 1872, were in the law when the *Kern River Co.* and *Stockton Gas* cases were decided. Moreover, the public streets and rights-of-way are exempt from taxation as public property. *Gaspard* v. *Edwin M. LeBaron, Inc.* (1951) 107 Cal.App.2d 356, 360 [237 P.2d 278], tells us "*[n]o authority exists for the assessment* and levy *of taxes on a public road,* or, to state the matter differently, *any attempted assessment,* levy and sale *of land impressed with an easement for use as a public road is entirely void* and ineffective to destroy or alter the public right." (Italics added.) It is clear such public rights-of-way cannot "be legally assessed or taxed for state, county, or municipal purposes." (*San Leandro* v. *Le Breton* (1887) 72 Cal. 170, 177 [13 P. 405].[5]) While we are not provided with a description of the assessor's practice in terms of attributing some part of the value of the fee owner's property to the portion underlying the public right-of-way, it follows from the rules of nonassessability quoted above that no part of the fee underlying the public right-of-way is assessed or taxed. In any event, given the public entity's rather plenary control over the public rights-of-way, any assessment of the portion underlying the public right-of-way to the adjoining owner would be of negligible value.

In this connection, Cox also argues that since the entire fee is assessed to the owner, and this includes the value of any easements on that property, Cox cannot be assessed separately for the value of its use of the cables or lines running through the public rights-of-way overlying the fee that is taxed. This essentially goes to the question of double taxation which was not decided below. However, to the extent Cox's argument in this respect concerns the authority of the assessor to make such a dual assessment, we address the argument here. It is true the uniform practice of assessors

---

[5]In a case involving a city's claimed dedication of streets shown on an unauthorized map where the streets were never used as such, the Supreme Court demonstrated the inadequacy of an argument the landowner should be estopped to assert ownership of the "streets" because for years the land had been assessed and taxed according to lots shown on the unauthorized map, saying: "Let the city's assessor fail to assess the property to the owner and it becomes the property of the city by gift or dedication because the owner is estopped to assert the contrary. However, if this be so, the converse must be equally true, and if the assessor of San Francisco should assess Market Street to the abutting property owners and they should pay the assessment, Market Street would immediately become private property and the city be estopped from asserting the contrary. In truth it is too preposterous to merit serious consideration that a ministerial officer like the assessor charged only with the duty of assessing property which should be assessed can by his mistaken act of omission or commission raise an estoppel for or against the city as to a matter in which he has absolutely no authority." (*Burk* v. *City of Santa Cruz* (1912) 163 Cal. 807, 811 [127 P. 154].)

in the state has been to make but one assessment of the land covering the value of all interests and estates in that land. (*Graciosa Oil Co.* v. *Santa Barbara* (1909) 155 Cal. 140, 143; [99 P. 483];[6] and see *Three G Distill. Corp.* v. *County of L. A.* (1941) 46 Cal.App.2d 498, 502 [116 P.2d 143].) This does not mean, however, assessors are not authorized to assess otherwise, for the uniform practice is only a "general rule." (*Ibid.*) Section 405, subdivision (a), specifically permits assessment of "all the taxable property . . . to the persons owning, claiming, possessing, or controlling it on the lien date." This language does not limit the assessment to the fee owner. (See Cal. State Board of Equalization Assessor's Handbook (Mar. 1975; pub. AH 501) General Appraisal Manual, p. 19.[7]) ▮ In cases involving oil and gas rights leases in privately owned land, separate assessment to the lessee and to the lessor is clearly authorized. (*Graciosa Oil Co.* v. *Santa Barbara, supra,* 155 Cal. 140, 146; see *Atlantic Oil Co.* v. *County of Los Angeles, supra,* 69 Cal.2d 585, 598.[8]) In a sense Cox's unique operation using the public rights-of-way to connect its cables or lines with adjoining property for the purpose of providing a service in exchange for revenue coming from that property is similar to the oil and gas rights lessee's operation.[9] We conclude an assessor is authorized to assess separately the

---

[6]"It is no doubt the general rule, regarding land held under an ordinary lease for years giving the right to hold the land for usufructuary purposes only, that, in the absence of contrary statutory provisions, there is to be but one assessment of the entire estate in the land, and that this assessment should include the value of both the estate for years and of the remainder or reversion. [Citations.] Section 3887 of the Political Code recognized this rule and provided that 'the mortgagor or lessor of real estate is liable for the taxes thereon.' This section was repealed in 1880, but, so far as we are advised, the practice of making but one assessment of such land and covering therein the entire value of all interests and estates, has been uniformly followed in this state, since its repeal as well as before." (*Graciosa Oil Co.* v. *Santa Barbara, supra,* 155 Cal. 140, 143.)

[7]"Generally, the value of the complete fee simple rights in real property is assessed to the owner of record. This practice is a great administrative convenience and has the sanction of the courts. While theoretical justification exists for the position that only those rights actually possessed by the owner of record should be assessed to him and that other partial interests should be assessed to those possessing them, it is not feasible in a mass appraisal program to differentiate all interests in a property for separate assessment. In effect, property rights are appraised as a unit and any division of tax responsibility must be made between the owners of the various partial interests." (Cal. State Board of Equalization Assessor's Handbook, *supra,* General Appraisal Manual, p. 19.)

[8]"In the case of privately owned land, the entire value of the mineral estate is taxable, and liability for the payment of taxes between the lessor and lessee is a subject for agreement between them. Accordingly, *it is essentially only a matter of bookkeeping whether the assessor assesses the entire mineral estate to the lessee or lessor or assesses their interests separately.*" (*Atlantic Oil Co.* v. *County of Los Angeles, supra,* 69 Cal.2d 585, 598, italics added.)

[9]Construing the predecessor to section 104, former Political Code section 3617, in the context of determining the propriety of separate lessee and lessor property taxation with respect to oil and gas rights in privately owned land, the Supreme Court determined the lessee's "claim to" the land supported separate taxation, stating in part: "The code recognizes

fee owner's fee interest and Cox's interest in the use of the public rights-of-way, and the fact the underlying fee is privately owned has no bearing on the taxability of such interests which Cox holds.

Cox tells us "[u]nfortunately, in recent years some of the California Courts of Appeal have occasionally lost sight of the original purpose and intent of taxing certain 'possessory interests,' and have strayed from the proper standards, set by the Supreme Court, for determining taxability." ▉ In the cases Cox describes as "somewhat misguided," a feature the courts considered in determining taxability was, according to Cox, "private pecuniary profit." More aptly, the feature, one of several and not itself controlling,[10] should be described as the right to obtain an economic benefit from the use or possession of property, i.e., that the interest *is held* for private pecuniary profit. (See *General Dynamics Corp.* v. *County of L. A.* (1958) 51 Cal.2d 59, 66 [330 P.2d 794]; *Freeman* v. *County of Fresno* (1981) 126 Cal.App.3d 459, 463 [178 Cal.Rptr. 764].) As we have seen, consideration of the factor that the interest is held for economic benefit has long been the law of the state. (*Kern River Co.* v. *County of Los Angeles, supra,* 164 Cal. 751, 754, "mere fact that the right to collect rates was not asserted did not make it valueless however.") We cannot apply the terms "strayed" or "misguided" to the more recent Court of Appeal decisions that taxable possessory interests exist in connection with uses of tax exempt property under government control. (See *Board of Supervisors* v. *Archer, supra,* 18 Cal.App.3d 717, 725-726, grazing permits and agricultural leases on federal land, though terminable at any time, are taxable possessory interests; *Wells Nat. Services Corp.* v. *County of Santa Clara* (1976) 54 Cal.App.3d 579, 585 [126 Cal.Rptr. 715], concession agreement for tele-

---

such rights and privileges as a species of property in real estate and makes sufficient provision for the effective enforcement of payment of taxes thereon. Section 3617 provides as follows: 'The term *"real estate"* includes: 1. *The* possession of, *claim to,* ownership of, or right to the possession of *land.* 2. All mines, minerals, and quarries in and under the land, all timber belonging to individuals or corporations, growing or being on the lands of the United States, and all rights and privileges appertaining thereto.' The strata of oil, or oil-bearing sand, constitute, as we have seen, a part of the land which may be the subject of separate ownership. There may be a separate 'claim to' this part of the land, as well as a separate 'claim to' a portion of the surface. *A 'claim to' take this stratum from its place and then convert it to one's own use may well be termed a claim to land, although not accompanied by actual physical possession of the subterranean deposit.* The lease also gives plaintiff the right to possession of the surface of the ground, so far as may be necessary to enable it to bore for the extract oil and as an incident to the main purpose of the contract. *The plaintiff's rights may therefore, in these aspects, be classed as real estate within the first clause of section 3617.*" (*Graciosa Oil Co.* v. *Santa Barbara, supra,* 155 Cal. 140, 146, italics added.)

[10]Considerations having to do with the right having a reasonably certain determinable period and its exclusivity also come into play. (See *Kaiser Co.* v. *Reid* (1947) 30 Cal.2d 610, 618-622 [184 P.2d 879].)

vision set rental to patients in public hospital had sufficient incidents of exclusiveness, durability, independence and private benefit to be held a taxable possessory interest; *Stadium Concessions, Inc.* v. *City of Los Angeles* (1976) 60 Cal.App.3d 215, 225 [131 Cal.Rptr. 442], concessions agreement giving right to sell at public stadium and arena where agreement contemplated permanent occupancy of public improvements and otherwise had sufficient incidents of exclusivity of use, independence of operation and profit motive was held to be a taxable possessory interest; *Freeman* v. *County of Fresno, supra,* 126 Cal.App.3d 459, 463, concessions agreement for amusement machines at public facilities including an airport terminal are taxable possessory interests.[11])

▆▆ ▆▆▆ ▆▆ *Freeman, supra,* 126 Cal.App.3d 459, 463-464, describes the basic elements of taxable possessory interests as outlined in *Kaiser Co.* v. *Reid, supra,* 30 Cal.2d 610, and makes the following observations on the state of the law on the subject: "The agreement had to confer use and possession (1) for a reasonably certain determinable period, (2) which was exclusive against all the world, including the rightful owner, and (3) which generated a valuable private benefit. In *Kaiser* that benefit was the ability to earn a profit. . . .

" . . . . . . . . . . . . . . . . . . . . . .

"In more recent times the three *Kaiser* requirements have been applied in a less demanding way so as to find a taxable interest in most cases in which the private use of public property has been special to the person concerned and valuable. Whether it was a ranger's use of a federally owned residence, the berthing of a commercial boat at a public wharf, or the exclusive right to provide television sets to patients at a hospital, *the focus has been on the belief that the holder of a valuable use of public property that is tax exempt should contribute taxes to the public entity which makes its possession possible and provides a certain amount of exclusivity.*

"The protax trend has found courts testing the requirement of a reasonably certain period of enjoyment by an examination of the agreement as stated in writing *and* [italics in orig.] the history of the relationship of the parties, thereby finding durability because of the passage of time even though the agreement may have been cancelable at the will of the parties. *The requirement that the use must be exclusive means that it must not be one shared*

---

[11]*Freeman, supra,* 126 Cal.App.3d 459, 461, at footnote 1, makes a useful compilation of recent possessory interest tax cases involving private uses of public property, showing the great diversity in such interests giving rise to the tax.

*by the general public and, at least until cancelled, must be enforceable against the public entity which permits the use.* As previously indicated, the valuable private benefit may be income, or merely a place to live incident to employment." (*Freeman* v. *County of Fresno, supra,* 126 Cal.App.3d 459, 463-464, italics added.)

Cox's interest in the public rights-of-way, which are themselves tax exempt, meets the *Kaiser* and *Freeman* criteria for a taxable possessory interest.

■ Earlier, *Freeman* points out it was the historical fact of large public ownership of California land that produced the concept of a taxable possessory interest. (*Freeman* v. *County of Fresno, supra,* 126 Cal.App.3d 459, 462-463, citing the lead cases, *State of California* v. *Moore, supra,* 12 Cal. 56, and *San Pedro etc. R. R. Co.* v. *Los Angeles* (1919) 180 Cal. 18 [179 P. 393]; see also *Board of Supervisors* v. *Archer, supra,* 18 Cal.App.3d 717, 727.) An historical factual basis for a rule does not require incorporating as an element a requirement that the underlying fee be tax exempt. It is enough that the property in which the private interest is held, here the public rights-of-way, is tax exempt, so long as the *Kaiser* elements of the taxable possessory interest are present. In *Stadium Concessions, Inc.* v. *City of Los Angeles, supra,* 60 Cal.App.3d 215, 225, it is said: "The Agreement confers upon plaintiff more than a naked right; *it contemplates permanent occupancy by plaintiff of public improvements,* i.e., concession stands, to which both plaintiff and the Commission have access by duplicate keys, during those times when plaintiff is performing the service function contemplated by the parties." (Italics added.) Likewise here, the franchises or licenses contemplate permanent occupancy by Cox of public improvements, i.e., streets, to which both Cox and the public entities have access. The public improvement, not the ownership of the underlying fee, plays the significant role in this analysis.

■ In this connection, we point out that administrative codes and interpretations are only binding if valid and not contrary to existing law, though they are of some significance. (*Board of Supervisors* v. *Archer, supra,* 18 Cal.App.3d 717, 726.)[12] The provision of section 21, subdivision (b), title 18 of the Administrative Code that "'Taxable possessory interest' means a possessory interest in a nontaxable publicly owned real property"

---

[12]The trial court's view that regulations take precedence over statutes (see *ante,* p. 374, par. 4d) contravenes this well-established rule.

should be construed so that "owned" includes public entity controlled rights-of-way.[13] The public rights-of-way in which cable television appurtenances may be placed are viewed by the Legislature as "of," i.e., belonging to, the city, county or city and county. (Gov. Code, § 53066.) ▇ For all intents and purposes, except for the presumptions of Civil Code sections 831 and 1112, the public entity "owns" the public streets and highways (see *People* v. *County of Marin* (1894) 103 Cal. 223, 226-227 [37 P. 203], "*The easement of the public* in and to a public highway is as sacred as any other property right, and *cannot be divested by the action of the owner of the servient tenement* in which it exists." (Italics added; see also *City of Los Angeles* v. *Fiske* (1953) 117 Cal.App.2d 167, 172 [255 P.2d 445].) How else, one might ask, could the public entity possess the authority to grant the very rights we consider in this case?

Contrary to Cox's argument, its right under these franchises or licenses exclusively to place and use its cables and lines under the public rights-of-way is something more than a right in common with others. (See *United States of America* v. *County of Fresno* (1975) 50 Cal.App.3d 633, 638 [123 Cal.Rptr. 548].) Cox's right is sufficiently distinguishable from the general public's use in its constant presence aspect, among others, to fulfill the exclusive use requirement for possessory interests. In this connection, we have reviewed the various franchise agreement provisions Cox has brought to our attention at this court's request. Those provisions, contractual in nature, do not make Cox's possessory interest in the public rights-of-way nonexclusive for property tax purposes. Unless and until Cox is required to relocate or remove its cables or lines from a particular location, its rights of use of a location for Cox's purposes are exclusive of anyone else's similar rights. The exclusivity of Cox's interests is not unlike that involved in *Board of Supervisors* v. *Archer, supra,* 18 Cal.App.3d 717, involving rights to pasture cattle on government land even though that right is revocable at the government's will and may be required to be exercised along with other cattle owners. (See 18 Cal.App.3d at pp. 724-727.) Nor is Cox's exclusivity dissimilar to that of the taxpayer in *Sea-Land Service, Inc.* v. *County of Alameda* (1974) 36 Cal.App.3d 837 [112 Cal.Rptr. 113], where the taxpayer had "exclusive possession against all the world, including the owner, *whenever* [the taxpayer] has a 'business need' for the property" (*id.,* at p. 842;

---

[13]Cox also points to the Board of Equalization's Assessor's Handbook (rev. Feb. 1974; pub. AH 517) The Appraisal of Possessory Interests, which at page 5 states: "The term 'possessory interest' as it is used for property taxation purposes in California includes either the possession or the right to possession of real estate whose fee title is held by a tax-exempt public agency."

This statement, whose active verb "includes" is nonexclusive, is not reasonably to be construed as Cox's citation implies, that *only* possessory interests on land owned in fee by a public entity are subject to the property tax.

italics added) where the owner, a tax exempt port operated by the City of Oakland, granted only a "nonexclusive preferential assignment to use" the wharf premises and reserved to the port the right to use the premises for the same purposes as the taxpayer "''''. . . *provided, only,* that *such use* by the Port *shall not unreasonably interfere* with the operations of [taxpayer] . . . .'''''" (*Id.,* at p. 840.) The exclusivity element of possessory interests found present in these two cases for property tax purposes is as present in Cox's case notwithstanding the nonexclusivity language in the franchises.[14]

■ In response to Cox's argument the public entities cannot create a taxable subeasement or other possessory interest out of the public entities' easements, we observe there is no value in application of a general rule of real property law that the holder of an easement cannot create a "sub-easement." (*City of Hayward* v. *Mohr* (1958) 160 Cal.App.2d 427, 432-433 [325 P.2d 209]; cf. *Stockton Gas etc. Co.* v. *San Joaquin Co., supra,* 148 Cal. 313, 321.) The labeling of the use is unimportant if the use otherwise constitutes a taxable possessory interest under the property tax law.

We next consider Cox's argument its use and possession is not separable from the special franchise itself and for this reason is not taxable as a possessory interest. It is true franchises are a class of property separate from all classes of property and are made a separate subject of taxation by section 27 (formerly § 16) of article XIII of the California Constitution. (*Roehm* v. *County of Orange* (1948) 32 Cal.2d 280, 286 [196 P.2d 550].) Section 27 of article XIII provides: "*The Legislature,* a majority of the membership of each house concurring, *may tax corporations,* including State and national banks, *and their franchises by any method not prohibited by this Constitution or the Constitution or laws of the United States.* Unless otherwise provided by the Legislature, the tax on State and national banks shall be according to or measured by their net income and shall be in lieu of all other taxes and license fees upon banks or their shares, except taxes

---

[14]For example, section 4(J) of the San Diego County franchise states: "This franchise and privilege shall be nonexclusive and shall not prevent the Board of Supervisors of the County of San Diego from granting or selling another franchise for the same use and purpose within the area to which this franchise and privilege is applicable." Section 4(K) of the County franchise states: "This franchise and privilege shall be subordinate to any existing franchise or lawful occupancy of any public highway, street, road or other public property for the purpose of erecting, operating and maintaining poles, lines, conduits, cables, gas pipe lines and other necessary fixtures used in connection with the purpose of said existing franchise or franchises or any extension thereof." (See also similar franchise provisions: City of San Diego, §§ 8(b), (c); Chula Vista, §§ 6(c), 5(b); El Cajon, §§ 6(b), 5(b); Imperial Beach, §§ 5(b), 7(b); La Mesa, §§ 5(b), 6(c); Lemon Grove, §§ 5(b), 6(b); National City, §§ 5(b), 6(b).)

upon real property and vehicle registration and license fees." (Italics added.)

The view that there is a merger of any possessory interest held by a franchise and the franchise itself for purposes of taxation simply is not supported by authority. In *Stockton Gas etc. Co.* v. *San Joaquin Co., supra,* 148 Cal. 313, 321, discussing the issue of where property must be assessed under the constitutional requirement that property be assessed where it is situated, the court did say the similar franchise "is indissolubly annexed to the street of a city in and upon which it is exercised . . . an easement appurtenant to such streets. This being so, it necessarily, as real property, has a *situs* in the city where it is exercised, and, under the constitutional provision with reference to the assessment of property, must be assessed there. It will be observed from these authorities which we have cited that the right to use the streets, and the right to take tolls by reason of their use, are inseparable parts of the franchise. The latter is a right arising out of the soil, a right to take a profit out of the easement acquired in the streets of the city, and the easement and the right to take a profit therefrom can be valuable only when exercised together." Thus, the court in part supported its conclusion that the utility, "in the exercise of its franchise, acquired rights of property in and over the streets of the city . . . of a character distinctively local to that city, and that, under section 10 of article XIII of the constitution[15] . . . they were properly assessed by the assessor of San Joaquin County in that county." (*Id.,* at p. 322.) The issue in *Stockton Gas* merely had to do with the propriety of local assessment of the utility's local property gained by franchise from the state. The fact that for other purposes such as local assessment there is a degree of inseparability between a franchise and its right to use the streets and take tolls by reason of their use does not require the conclusion those possessory interests are not separately assessable and taxable. No case so holds, and *Kern River Co., Stockton Gas* and *San Jose Gas,* involving locally assessed taxation of the utilities' possessory interests under the franchises lead to the contrary conclusion. The same conclusion removes any validity from the trial court's reason (*ante,* p. 374, par. 4c) that any compensation from Cox for the use of the public streets and rights-of-way to lay its cables has to be deemed covered by the franchise fee.

Finally, we consider Cox's argument only the Board may assess it. Pursuant to section 27, article XIII of the Constitution, which permits taxation

---

[15]Former section 10, article XIII, California Constitution, read in part "all property . . . shall be assessed in the county, city, city and county, town, township, or district in which it is situated."

of corporate franchises by any method not prohibited by the Constitution or laws of the United States, the Legislature enacted section 23154,[16] part of the Bank and Corporation Tax Law. Section 23154 provides that the franchise tax imposed on corporations is in lieu of all ad valorem taxes and assessments upon the *general corporate franchises* of corporations taxed under the bank and corporation tax law, but is not in lieu of any taxes or assessments upon *special franchises owned,* held or used *by these corporations.* The last sentence of the section provides for Board assessment of special franchises in the same manner as is provided for the assessment by the Board under section 19, article XIII of the California Constitution.[17] Section 19 of article XIII requires Board assessment of specified categories of property lying within two or more counties and property (except franchises) owned or used by regulated railroads and utilities. It is apparent that when special franchises are possessed by those state assessed general franchises, section 23154 calls for state assessment of the special franchises as well as the general franchise. Prevention of likely inconsistent local assessment of part of regulated public utility property is the purpose of section 23154. It follows, under section 404,[18] all other property, including special franchise property owned, held or used by nonregulated public utility corporations, is to be assessed by the local assessor. Since Cox is not such a public utility (see *Television Transmission* v. *Public Util. Com.* (1956) 47 Cal.2d 82, 89 [301 P.2d 862]), its special franchise is to be assessed by the county assessor. That was done here.

---

[16]Section 23154 reads: "The tax imposed under this chapter is in lieu of all ad valorem taxes and assessments of every kind and nature upon the general corporate franchises of the corporations taxable under this chapter but is not in lieu of any taxes or assessments upon special franchises owned, held or used by said corporations. All such special franchises shall be assessed annually by the board, at their actual value, in the same manner as is provided for the assessment of other property to be assessed by said board under Section 19 of Article XIII of the Constitution of this State, and shall be subject to taxation to the same extent and in the same manner as other property so assessed by said board."

[17]Article XIII, section 19 of the California Constitution reads: "The Board shall annually assess (1) pipelines, flumes, canals, ditches, and aqueducts lying with 2 or more counties and (2) property, except franchises, owned or used by regulated railway, telegraph, or telephone companies, car companies operating on railways in the State, and companies transmitting or selling gas or electricity. This property shall be subject to taxation to the same extent and in the same manner as other property.

"No other tax or license charge may be imposed on these companies which differs from that imposed on mercantile, manufacturing, and other business corporations. This restriction does not release a utility company from payments agreed on or required by law for a special privilege or franchise granted by a government body.

"The Legislature may authorize Board assessment of property owned or used by other public utilities.

"The Board may delegate to a local assessor the duty to assess a property used but not owned by a state assessee on which the taxes are to be paid by a local assessee."

[18]Section 404 reads: "All taxable property, except State assessed property, shall be assessed by the assessing agency of the taxing agency where the property is situated."

Cox's incident of its special franchise consisting of a taxable possessory interest was properly assessable by the county assessor.

Judgment reversed.

Wiener, Acting P. J., and Butler, J., concurred.

Respondent's petition for review by the Supreme Court was denied November 26, 1986.