**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**COUNTY OF SAN DIEGO,
Defendant–Appellee.**

No. 91–55321.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 6, 1992.

Decided May 19, 1992.

692

John J. McCarthy, U.S. Dept. of Justice, Tax Div., Washington, D.C., for plaintiff-appellant.

Miriam Brewster, Deputy County Counsel, San Diego, Cal., for defendant-appellee.

Before WALLACE, Chief Judge, BROWNING and SKOPIL, Circuit Judges.

WALLACE, Chief Judge:

The United States of America (government) appeals from a district court decision denying its motion for summary judgment and granting partial summary judgment to the County of San Diego (County). We are presented with the question of whether General Atomics, a federal contractor, has an independent possessory interest in a government-owned experimental fusion device (device) subject to California's *ad valorem* property tax. The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1345. We have jurisdiction over this interlocutory appeal pursuant to 28 U.S.C. § 1292(b). We affirm.

I

The United States Department of Energy (Department) funds and administers nuclear fusion research at several locations throughout the country in an attempt to develop a magnetically confined fusion system capable of generating commercial electric power. *See* Magnetic Fusion Energy Engineering Act of 1980, 42 U.S.C. § 9301(b)(1). General Atomics, a private scientific research firm, maintains and operates a federally owned experimental fusion device at its San Diego facility. Pursuant to seven different cost reimbursement contracts, General Atomics provides services to the government with respect to the design, assembly, operation, and maintenance of the device. The contracts are terminable at the option of the Department. Although located on General Atomics' property, the device remains the personal property of the Department, which retains control over access to the device by General Atomics' employees and others. The district court determined that the device is a fixture on General Atomics' property, and the government does not appeal that decision.

Pursuant to the contracts, General Atomics participates in long and short range planning for use of the device, subject to the approval of the Department. General Atomics regularly reports to the Department on general progress, as well as on the attainment of specific planning milestones. The Department maintains a permanent on-site representative who monitors and assesses General Atomics' progress by attending planning meetings and reviewing periodic reports. General Atomics' scientists are required to publish the results of the experiments and collaborate with scientists from the United States and foreign countries at the direction of and discretion of the Department.

The government pays General Atomics a fee for its services, averaging approximately $2.5 million per annum over the past seven years. In addition, all allowable costs incurred by General Atomics are reimbursed by the government. The government is also obligated to pay all state and local taxes on the device, including those addressed in this appeal.

The County made its first determination that General Atomics had a taxable possessory interest in the device after conducting a routine audit for the 1978 and 1979 tax years. In total, General Atomics has paid taxes, interest, and penalties, less refunds, in the amount of $568,002.12 for the 1978–81, 1987 and 1988 tax years. Since 1988, General Atomics has received, but has not paid, tax bills for the years 1982–85 and 1989, plus interest and penalties, in the amount of $721,979.55. The district court held that General Atomics has a taxable possessory interest in the device, but reserved the issue of its valuation pending this appeal. We granted the government's petition to bring this interlocutory appeal.

II

The government argues that the County's levy of an *ad valorem* property tax on General Atomics' use of the device violates the supremacy clause of the United States Constitution. We review the district court's order granting summary judgment

de novo. *Winebrenner v. United States*, 924 F.2d 851, 853 (9th Cir.1991).

## A.

■ We first consider whether the California statute in question constitutionally taxes possessory interests in federally owned property. California authorizes counties to assess and collect *ad valorem* taxes on possessory interests in real property owned by a tax exempt entity and improvements thereon. Cal. Const. art. XIII; Cal.Rev. & Tax.Code §§ 104, 107 (West 1987); Cal.Code Regs. tit. 18, § 21(b) (1990). A possessory interest includes "[p]ossession of, claim to, or right to the possession of land or improvements." Cal. Rev. & Tax.Code § 107(a). The device is a fixture, and therefore qualifies as an "improvement." *See id.* § 105(a). The California courts have defined "possessory interest" as "includ[ing] the right of a private individual or corporation to use government-owned tax exempt land or improvements, and this right is considered a private interest taxable by the state and its taxing agencies." *United States v. County of Fresno*, 50 Cal.App.3d 633, 638, 123 Cal.Rptr. 548 (1975), *aff'd*, 429 U.S. 452, 97 S.Ct. 699, 50 L.Ed.2d 683 (1977). In addition, a license or permit is a taxable possessory interest in property. *See Stadium Concessions, Inc. v. City of Los Angeles*, 60 Cal.App.3d 215, 222, 131 Cal.Rptr. 442 (1976) (*Stadium Concessions*), *citing Kaiser Co. v. Reid*, 30 Cal.2d 610, 618, 184 P.2d 879 (1947) (*Kaiser*).

General Atomics' right to "use" the device, in the form of a license, is regulated by the terms and procedures contained in the contracts. Therefore, although the tax levied against General Atomics is nominally an *ad valorem property* tax, General Atomics' use of government-owned improvements lies within California's expansive definition of possessory interest. *See United States v. County of Fresno*, 50 Cal.App.3d at 638, 123 Cal.Rptr. 548.

In *United States v. Nye County, Nevada*, 938 F.2d 1040 (9th Cir.1991) (*Nye County*), *cert. denied*, — U.S. —, 112 S.Ct. 1292, 117 L.Ed.2d 515 (1992), we held that taxation pursuant to a Nevada statute was unconstitutional because it imposed an *ad valorem* tax on property of the government, rather than the contractor's separate private interest in the property. *Id.* at 1043. We found that because the statute levied a tax on the contractor "in the same amount and to the same extent as though the lessee or user were the owner of the property," Nev.Rev.Stat. § 361.159(1), it made "no attempt to segregate and tax any possessory interest [the contractor] may have in the property." *Nye County*, 938 F.2d at 1043. As such, the statute violated the supremacy clause. In dicta, we affirmed the power of the state to assess a tax on federally owned tax-exempt property used by a contractor, stating that "[w]hile Nye County could no doubt enact a statute taxing a lessee's possessory interest in, or a user's beneficial use of, property owned by the United States, the statute under which it levied taxes against [the contractor] is not such a tax measure." *Id.*

The California statute does not suffer from the constitutional infirmity found in the Nevada statute. California's *ad valorem* tax statute taxes only General Atomics' possessory use interest in the device, and not the underlying value of the device itself. Therefore, if General Atomics has a possessory interest in the device, that interest may be taxed constitutionally by the California statute.

## B.

■ We now turn to the question whether the County's tax levy in this case violates the supremacy clause of the United States Constitution. The supremacy clause prohibits state taxation of federal property without the consent of the sovereign. *United States v. New Mexico*, 455 U.S. 720, 733, 102 S.Ct. 1373, 1382, 71 L.Ed.2d 580 (1982) (*New Mexico*); U.S. Const. art. VI, cl. 2. In *United States v. County of Fresno*, 429 U.S. 452, 97 S.Ct. 699, 50 L.Ed.2d 683 (1977) (*County of Fresno*), California taxed possessory interests in federally owned housing held by federal forest rangers. The Supreme Court declined to invalidate the tax, stating that to the extent a

state can isolate a private person's interest in property owned by the government, it can tax that interest. *Id.* at 462, 97 S.Ct. at 704–05. After upholding the tax on a forest ranger's use of federal housing, the Court opined that such a tax would not, however, be permitted on an employee's use of federal property, such as a fire ax or tower, which "he used *only* in performing his job.... The employee does not put either the ax or the tower to 'beneficial personal use,' and it is not part of his 'profit' or his 'salary.'" *Id.* at 466 n. 15, 97 S.Ct. at 707 n. 15 (emphasis in original) (citation omitted).

The government contends that General Atomics is not subject to taxation because it does not put the device to "personal beneficial use." It makes three related arguments. First, the government likens General Atomics' use of the device to a forest ranger's use of a fire ax. It contends that to have a "beneficial personal use" of federally owned property, an entity must have been granted a right to use the federally owned property in its own discretion to pursue some private purpose, citing *County of Fresno.*

Nothing in *County of Fresno,* however, implies that incidental benefits accruing to General Atomics as a result of its performance of contractual duties cannot also constitute "personal beneficial use." In *County of Fresno,* for example, forest rangers were required to live in federally owned cabins as part of their employment duties. Although the rangers fulfilled contractual obligations by living in the cabins, the Court nonetheless found that the County of Fresno could tax their use of the property because they benefitted personally from the housing. As the rangers received a taxable benefit for use of the cabins, so too did General Atomics' performance of the contracts result in incidental taxable benefits stemming from participation in research directed at producing commercially valuable technical information.

Next, the government contends that General Atomics is a mere business invitee, and that its use of the device is related solely to performance of "service" contracts for the Department. This argument was rejected by the Supreme Court in *United States v. Boyd,* 378 U.S. 39, 44–45, 84 S.Ct. 1518, 1521–22, 12 L.Ed.2d 713 (1964) *(Boyd ).* The management contracts in *Boyd* required the contractors to perform maintenance and construction work at federal facilities under the direction of the government. The contractors owned none of the property involved, and received a fixed annual fee for their services. Tennessee levied a use tax on the property. The Court found irrelevant the fact that the property was being used for the government's benefit, stating that the contractors' actions remained "commercial activities carried on for profit." *Id.* at 44, 84 S.Ct. at 1522.

Similarly, in this case, the annually negotiated fees earned by General Atomics are substantial, and "[n]o one suggests that [General Atomics] has put profit aside in contracting with the [Department]." *Id.* at 45, 84 S.Ct. at 1522. Receipt of these fees and access to the device enable General Atomics to participate in the field of fusion research, an activity it could not otherwise afford to conduct on its own. General Atomics participates extensively in the planning process and obtains information and expertise by conducting fusion research for the Department. This research differs from mere "service" of federal property in that its very purpose is to obtain valuable knowledge, rather than merely to operate and maintain the device. General Atomics benefits financially from the sale and application of knowledge obtained from experiments conducted with the use of the device. And its participation in determining the nature of the research conducted necessarily involves a level of use exceeding that of a business invitee providing contract services.

In *New Mexico,* the Supreme Court recognized that federal contractors "receive a variety of additional benefits from the[ir] contract[s with the government]. Most obviously, they develop expertise and acquire valuable technical information." 455 U.S. at 724 n. 3, 102 S.Ct. at 1377 n. 3. General Atomics obtains like benefits from its contracts with the Department. Therefore,

the County's taxation of this beneficial use is not a tax on federal property, but rather a tax on an "essentially independent commercial enterprise." *Id.* at 742, 102 S.Ct. at 1387.

The government also argues that General Atomics has no property interest in the device because the contracts expressly prohibit its use for private purposes. That General Atomics is prohibited from using the device for purposes other than performance of contractual duties is irrelevant to our inquiry. Contractual restrictions do not preclude a determination of a taxable beneficial use of property. *See United States v. Township of Muskegon,* 355 U.S. 484, 487, 78 S.Ct. 483, 485, 2 L.Ed.2d 436 (1958). The government's focus on contractual limitations avoids the essential underlying issue: whether General Atomics makes beneficial use of the device concurrent with its performance of contractual duties for the Department.

The government attempts to distinguish *New Mexico* and *Boyd* on the basis that they addressed sales, gross receipts, and compensating use taxes, and not an *ad valorem* property tax like the one levied against General Atomics. However, because California's possessory interest statute includes taxation for *use* of property, the "use" versus "property" distinction urged by the government, and discussed in *Nye County,* is not persuasive here. *United States v. County of Fresno,* 50 Cal. App.3d at 638, 123 Cal.Rptr. 548; *Nye County,* 938 F.2d at 1042–43. In light of California's interpretation of the *ad valorem* property tax as including use, we are persuaded that the reasoning of *New Mexico* and *Boyd* apply equally to the tax levied in this case. Therefore, we affirm the district court determination that General Atomics has a personal beneficial interest in the device.

The cases cited by the government in support of its position are readily distinguishable. The statute in *United States v. Colorado,* 627 F.2d 217 (10th Cir.1980), *aff'd,* 450 U.S. 901, 101 S.Ct. 1335, 67 L.Ed.2d 325 (1981), like the statute in *Nye County,* taxed the value of the federal property, rather than a segregated interest in the property based on its use. *Id.* at 218. Similarly, the court in *United States v. Hawkins County, Tennessee,* 859 F.2d 20 (6th Cir.1988), *cert. denied,* 490 U.S. 1005, 109 S.Ct. 1638, 104 L.Ed.2d 154 (1989), found that the contractor made "beneficial use of the government-owned property" because it earned a profit on its cost-plus contracts, but held that the state statute did not tax such "beneficial use." *Id.* at 23. These cases are inapplicable to the statute addressed here. Finally, the government relies on *United States v. Anderson County, Tennessee,* 761 F.2d 1169 (6th Cir.), *cert. denied,* 474 U.S. 919, 106 S.Ct. 248, 88 L.Ed.2d 256 (1985), which invalidated a tax because the state supreme court had already held that the contractor did not possess a taxable interest under Tennessee's statute. *Id.* at 1172–75. In contrast, California's statute imposes a tax on General Atomics' separate possessory interest in the device, and no state court has ruled that General Atomics lacks such an interest in the device. Because the County seeks to tax only General Atomics' use of the property, and not the property's value, it is not an unconstitutional tax on the United States.

## C.

We have determined that General Atomics has a possessory interest in the device stemming from its personal beneficial use. The government concedes that General Atomics "benefits from its federal contract by way of its fixed fee and by acquisition of experience." Nonetheless, it argues that General Atomics' use of the device is not taxable because it is conducted at the direction and discretion of the Department, for the sole benefit of the government. Although the government does not argue that General Atomics is its agent, this argument amounts to the same.

In *New Mexico,* the Supreme Court held that the "underlying constitutional principle" of the supremacy clause is that "a State may not ... lay a tax 'directly upon the United States.'" 455 U.S. at 733, 102 S.Ct. at 1382 (citations omitted). *New Mex-*

*ico* addressed the question: "to what extent may a State impose taxes on contractors that conduct business with the Federal Government?" *Id.* at 722, 102 S.Ct. at 1376. The Court pointed out that "immunity may not be conferred simply because the tax has an effect on the United States, or even because the Federal Government shoulders the entire burden of the levy." *Id.* at 734, 102 S.Ct. at 1382. It concluded

> that tax immunity is appropriate in only one circumstance: when the levy falls on the United States itself, or on an agency or instrumentality so closely connected to the Government that the two cannot realistically be viewed as separate entities, at least insofar as the activity being taxed is concerned.

*Id.* at 735, 102 S.Ct. at 1383.

■ General Atomics is an independent corporate entity with involvement in fusion research predating its contracts with the government. It brought skill and knowledge to the experiment that the government needed and did not have. Should the Department seek to conduct an experiment with its own employees, it may do so. Having chosen a different path, however, the government cannot persuasively argue that General Atomics' use of the device is such that it should be treated as an instrumentality of the government and thus enjoy immunity from taxation. *See Boyd,* 378 U.S. at 48, 84 S.Ct. at 1524.

■ The information and expertise General Atomics obtains through operation of the device enables it to profit by providing information and services to the fusion technology market. Therefore, with respect to the activity being taxed, we agree with the district court that General Atomics' interest in the device sufficiently distinguishes it from the government, such that a tax on General Atomics is not a tax on the government in violation of the supremacy clause.

### D.

Finally, we point out that *New Mexico* also fashioned a separation of powers framework for analyzing supremacy clause challenges to state taxation:

> [i]f the immunity of federal contractors is to be expanded beyond its narrow constitutional limits, it is Congress that must take responsibility for the decision, by so expressly providing as respects contracts in a particular form, or contracts under particular programs. And this allocation of responsibility is wholly appropriate, for the political process is uniquely adapted to accommodating the competing demands in this area. But absent congressional action, we have emphasized that the States' power to tax can be denied only under the clearest constitutional mandate.

455 U.S. at 737–38, 102 S.Ct. at 1384 (internal quotations and citations omitted). Thus, *New Mexico* requires courts to construe constitutional limits on state taxation narrowly. Here, as in *New Mexico,* Congress could have, but did not, bar state and local taxation of the Department's "activities." We therefore will not "establish as a constitutional rule something that [the Department] was unable to obtain statutorily from Congress." *Id.* at 744, 102 S.Ct. at 1388.

### III

■ The government contends that even if the County's levy of the possessory interest tax does not violate the supremacy clause, General Atomics is not subject to the tax as a matter of California law. The existence of a taxable possessory interest under California law is determined by objective circumstances, rather than the language of the contracts. *Stadium Concessions,* 60 Cal.App.3d at 223, 131 Cal.Rptr. 442. Four factors are weighed: exclusivity, independence, durability, and private benefit. *See* 18 C.C.R. 21(a)(1); *Freeman v. County of Fresno,* 126 Cal.App.3d 459, 463, 178 Cal.Rptr. 764 (1981) (*Freeman*); *Stadium Concessions,* 60 Cal.App.3d at 223, 131 Cal.Rptr. 442. The government challenges the district court's ruling on three of these factors: exclusivity, independence, and private benefit.

A possessory interest must carry "the degree of *exclusiveness* necessary to give the occupier or user something more than a right in common with others." *United*

*States v. County of Fresno,* 50 Cal.App.3d at 638, 123 Cal.Rptr. 548 (emphasis in original). The government argues that because General Atomics cannot exclude the government, or anyone it directs, from using the device, General Atomics' use is not "exclusive."

Exclusivity is broadly defined under California law. *See Stadium Concessions,* 60 Cal.App.3d at 224, 131 Cal.Rptr. 442. An exclusive use, however, is not destroyed by "multiple," "concurrent," or "alternating" uses of the property. *Id.* Nor is exclusivity affected by the temporary and revocable status of a possessory interest. *Board of Supervisors v. Archer,* 18 Cal.App.3d 717, 725, 96 Cal.Rptr. 379 (1971) (*Archer*). Contractual conditions that limit General Atomics' use of the device go to valuation, not exclusivity. *Id.; Freeman,* 126 Cal. App.3d at 465, 178 Cal.Rptr. 764. Therefore, we hold that General Atomics' use of the property is "exclusive" within the meaning of that term because it is not "shared by the general public." *Freeman,* 126 Cal.App.3d at 463-64, 178 Cal.Rptr. 764; *see also United Air Lines v. County of San Diego,* 1 Cal.App.4th 418, 2 Cal. Rptr.2d 212, 217 (1991) (upholding *ad valorem* property tax on airline's use of municipal airport runway).

The government also contends that General Atomics' use of the device is not "independent" because it manages the device at the direction of the government for the government, not for private business purposes. A use is independent, however, when "much is left to the routine control and supervision of the [user]" even though the government retains "ultimate control." *Stadium Concessions,* 60 Cal.App.3d at 225, 131 Cal.Rptr. 442. General Atomics participates in both the broad and detailed stages of planning and alone operates the device. Hundreds of General Atomics' employees perform nearly all functions under the contracts. Routine control is exercised by General Atomics. Though the government retains ultimate control over the device, this fact bears upon only the value of General Atomics' interest, not its taxability. *See Freeman,* 126 Cal.App.3d at 465,

178 Cal.Rptr. 764; *Archer,* 18 Cal.App.3d at 725, 96 Cal.Rptr. 379.

In arguing a lack of private benefit, the government contends that the "acquisition of experience that the District Court determined ... to constitute the taxable private benefit does not give [General Atomics] an interest in the property subject to the possessory interest use tax." It relies on *Kaiser* for the proposition that a tangible possessory interest is a "usufructuary right, that is, the right of using and enjoying the profits of a thing belonging to another, without impairing the substance." 30 Cal.2d at 621, 184 P.2d 879 (internal quotations omitted). The government contends that General Atomics is a mere business invitee serving the purposes of the Department, rather than any private business interest.

California law allows taxation of an interest in government property if the "possession" or "use" of the property privately benefits the user. *Cox Cable San Diego, Inc. v. County of San Diego,* 185 Cal. App.3d 368, 381, 229 Cal.Rptr. 839 (1986). *Cox Cable* defines private benefit as "the right to obtain an economic benefit from the use or possession of property." *Id.* This right includes use of tax exempt property under government control. *Id.* General Atomics receives a fee for managing the device, as well as substantial saleable expertise. The fact that General Atomics' activities fulfill contract obligations to the government does not negate the fact that General Atomics also obtains an economic benefit from its use of the device.

In conclusion, we point out that in recent years, California courts have applied the possessory interest factors

> "in a less demanding way so as to find a taxable interest in most cases in which the private use of public property has been special to the person concerned and valuable ... [T]he focus has been on the belief that the holder of a valuable use of public property that is tax exempt should contribute taxes to the public entity which makes its possession possible and provides a certain amount of exclusivity."

*Id.* at 382, 229 Cal.Rptr. 839, *quoting Freeman,* 126 Cal.App.3d at 463, 178 Cal.Rptr. 764 (emphasis deleted). In accord with this trend in California law, we conclude that General Atomics' interest in the fusion device is taxable by the California statute.

AFFIRMED.